HALLIBURTON COMPANY, a Delaware Corporation, Plaintiff,

v.

TEXANA OIL COMPANY, INC., a Colorado Corporation, William O. Callaway, an Individual, and James E. Callaway, an Individual, Defendant.

Civ. A. No. 78–K–689.

United States District Court, D. Colorado.

June 8, 1979.

Stan L. Spangler, Edward C. Moss, Shaw, Spangler & Roth, Denver, Colo., for plaintiff.

T. Edward Icenogle, Calkins, Kramer, Grimshaw & Harring, Denver, Colo., for Wm. Callaway & Texana.

Charles S. Bloom, Wood, Herzog, Osborn & Bloom, Fort Collins, Colo., for James Callaway.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

This is a diversity action brought to collect on a promissory note in the amount of $10,160.22 executed on January 1, 1973 by defendant Texana Oil Company, Inc. ("Texana") in favor of plaintiff. This note was signed on behalf of Texana by defendant William O. Callaway as president and by James E. Callaway as vice-president. In addition to executing this note for Texana, defendants William and James Callaway personally guaranteed the note in their individual capacities. This matter is before the court on plaintiff's motion for judgment on the pleadings against defendant James Callaway pursuant to F.R.Civ.P. 12(c). Briefs and numerous affidavits have been submitted and the motion is now ripe for determination.

Plaintiff alleges that Texana has defaulted on the note, that demand for payment was made upon defendant James Callaway, and that despite this demand James Callaway has refused to pay the amount due under the guaranty. In his answer, James Callaway has admitted all the factual allegations in the complaint but asserts that this court does not have personal jurisdiction over him. Thus, the only questions before the court at this time are whether James Callaway's execution of the note and personal guaranty was sufficient under the Due Process clause to justify the exercise of personal jurisdiction over him pursuant to Colorado's "long arm statute," § 13–1–124, C.R.S.1973; and if so, whether plaintiff is entitled to a judgment on the pleadings as to defendant James Callaway.

## I JURISDICTION

█ It is well settled that where federal jurisdiction is based upon diversity of citizenship as in the instant case, personal jurisdiction "is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Arrowsmith v. United Press International*, 320 F.2d 219, 223 (2nd Cir. 1963); *accord, Litvak Meat Company v. Baker*, 446 F.2d 329, 331 (10th Cir. 1971). Thus, the question of personal jurisdiction over defendant James Callaway must be examined under Colorado's long arm statute which provides in its pertinent part:

§ 13–1–124 *Jurisdiction of courts.* (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by any agent, submits such person, and if a natural person his personal representatives to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state; * * *

█ The legislative intent of Colorado's long arm statute is to exert jurisdiction over non-residents to the fullest extent permitted under the Due Process clause of the federal constitution. *Mr. Steak, Inc. v. District Court,* Colo., 574 P.2d 95, 96 (1978); *Safari Outfitt'rs v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968).

In this motion plaintiff asserts that James Callaway's guaranty constitutes sufficient minimum contacts under Colorado law for this court to assert jurisdiction over him. On the other hand, James Callaway argues that since the note and guaranty were executed by him in Texas where he is domiciled, there is an absence of sufficient contacts with Colorado.

In determining whether Colorado has sufficient minimum contacts or substantial connection with the promissory note and guaranty signed by James Callaway, it is necessary to look at the particular facts surrounding the transaction.

From the uncontroverted facts set forth in various affidavits, it has been established that James Callaway is a domiciliary of Texas and vice-president, director and fifty per cent (50%) shareholder of Texana, a Colorado corporation. It has been further established that prior to the execution of the promissory note, Texana became indebted to plaintiff for services rendered by plaintiff in connection with an oil well located in Texas. In addition to its rights under the contract for services, plaintiff had the right to enforce a mechanic's and materialman's lien against the Texana oil well and certain other oil interests owned by Texana in Texas.

Defendant William Callaway, president, director and fifty per cent (50%) shareholder of Texana, contacted plaintiff in an effort to persuade it to forebear from enforcing its lien rights in connection with the debt. William Callaway asked plaintiff if it was willing to make alternative arrangements for payment of this debt. As a result of this request from William Callaway, plaintiff agreed to accept payment for one-half of the debt and to accept a promissory note for the remaining half on the condition that defendants William and James Callaway personally guaranty the note.

In his affidavit, William Callaway states that he was in Colorado at the time of these negotiations with plaintiff. He further states that while he was in Colorado, he had several telephone conversations with defendant James Callaway in Texas regarding the promissory note and personal guaranties.

The note and personal guaranty was signed by William Callaway in Denver. These documents were then mailed to James Callaway in Texas in order to obtain his signature as had been agreed upon in the Denver negotiations. James Callaway has admitted that he signed the note and personal guaranty in Texas. Furthermore, in connection with the execution of the note, James Callaway delivered his personal financial statement to plaintiff.

In exchange for the partial payment made by Texana and the execution and delivery of the note with the personal guaranties for the remainder of the debt, plaintiff released all its rights to mechanic's and materialman's liens against Texana's oil interests in Texas.

■ Thus, it is clear from these uncontroverted facts that the transaction forming the basis of this action was shaped by the Denver negotiations between William Callaway and plaintiff as well as the telephone conversations between William Callaway in Colorado and James Callaway in Texas. The agreement to execute the note and personal guaranties was entered into in Colorado. While not physically in Colorado during these negotiations, James Callaway did however, participate in critical telephone conversations in which he agreed to execute his personal guaranty. Without this guaranty, plaintiff would not have released its lien rights in Texas. By having engaged in these telephone conversations, James Callaway transacted business within Colorado and caused important business consequences in this state within the test set forth by the Colorado Supreme Court in *Van Schaack & Co. v. District Court,* Colo., 538 P.2d 425 (1975); *See also, Grynberg v. Ellis,* Civil Action No. 77–K–959 (D.Colo. Dec. 5, 1977).

Although it has been found that personal jurisdiction extends to telephone conversations involving the transaction of business within the forum, such jurisdiction has also been found on the basis of execution of a promissory note by a non-resident. In *Tucker v. Vista Financial Corp.,* Colo., 560 P.2d 453 (1977), the Colorado Supreme Court addressed the question of whether Colorado law permits the exertion of personal jurisdiction over a non-resident on the basis of a promissory note signed outside the forum state. In finding that jurisdiction exists under such circumstances, the court held that one who signs such a note creating indebtedness in another state may be sued in that other state. In the instant case James Callaway created an indebtedness in Colorado when he agreed to sign the promissory note negotiated in Denver.

In summary, the consequences of James Callaway's business activities in connection with the note and guaranty are found to be sufficient and substantial enough so that the assertion of personal jurisdiction by this court under applicable Colorado law is both fair and reasonable.

## II MOTION FOR JUDGMENT ON THE PLEADINGS

When a plaintiff files a motion for judgment on the pleadings under F.R.Civ.P. 12(c), the court must take as true all undenied facts alleged in the complaint. *Commerce National Bank v. Baron,* 336 F.Supp. 1125 (E.D.Pa.1971); 5 Wright & Miller, Federal Practice and Procedure § 1368. As stated earlier, defendant James Callaway has admitted all the material allegations contained in the complaint. In his answer filed on August 14, 1978, James Callaway admitted the following allegations in the complaint:

3. Upon information and belief, Texana Oil Company, Inc. ("Texana"), at the time of the events alleged herein was a duly licensed and authorized corporation under the laws of the State of Colorado, with a principal place of business at 145 Security

Life Building, Denver, Colorado 80202. On December 6, 1977, Texana was suspended as a corporation by the Secretary of State of the State of Colorado for failure to file required annual reports.

\*　　\*　　\*　　\*　　\*　　\*

5. Defendant James E. Callwaway is the vice president of Texana and, upon information and belief is a resident of the State of Texas \* \* \*.

6. On or about January 1, 1973, for value received and acknowledged, defendant Texana, acting through its president, William O. Callaway, and its vice president, James E. Callaway, executed and delivered to plaintiff its unsecured promissory note whereby Texana promised to pay to the order of plaintiff the principal sum of $10,160.22 with interest at the rate of 8% per annum, payable on or before 100 days after January 1, 1973 \* \* \* \*.

7. By the terms of the promissory note defendant Texana also agreed to pay attorney's fees in the amount of 15% of the principal and interest remaining unpaid on the note if it be placed in the hands of an attorney for collection or if suit or other judicial proceedings was instituted.

8. The promissory note was due in full on or before April 10, 1973. Despite plaintiff's demands for payment, defendant Texana has defaulted under the terms of the promissory note, having failed to pay plaintiff the entire amount of principal and accrued interest, or any of said amount, when the same was due, or at any time up to the date of this complaint.

9. By reason of its default, defendant Texana owes plaintiff the principal sum of $10,160.22, together with interest thereon accruing at the rate of 8% per annum from January 1, 1973, to the date of judgment, and an additional 15% of the principal and interest remaining unpaid for reasonable attorney's fees and costs incurred by plaintiff in enforcing the promissory note.

\*　　\*　　\*　　\*　　\*　　\*

14. Defendant James E. Callaway guaranteed payment of the promissory note in his individual capacity. Despite plaintiff's demands for payment, defendant James E. Callaway has defaulted under the terms of the promissory note, having failed to pay to plaintiff the entire amount, when the same was due, or at any time up to the date of this complaint.

James Callaway has admitted all of these allegations and denies ¶ 15 which states the legal conclusion that he is liable for the amount of the note. James Callaway has not asserted any legal defenses to the note or guaranty. It is clear from his answer that James Callaway has admitted all material allegations: the fact of indebtedness, the amount owed, the execution of the promissory note and his personal guaranty. The motion for judgment against James Callaway on the pleadings is granted.

IT IS ORDERED that this court has jurisdiction over James Callaway and that judgment on the pleadings shall enter against him. Pursuant to F.R.Civ.P. 54(b), the court finds that there is no reason to delay judgment against defendant James Callaway and directs the clerk of the court to enter a final judgment against James Callaway in accordance with this order.

This case is set for a one day trial to the court on August 10, 1979. Plaintiff filed a motion to extend the period of discovery upon resolution of its motion for judgment on the pleadings.

IT IS FURTHER ORDERED that since plaintiff's motion has been determined favorably, discovery shall be extended to July 1, 1979 and the pre-trial order is due on July 15, 1979.