**EAST VAIL TOWNHOMES, INC.,
Plaintiff-Appellant,**

v.

**EURASIAN DEVELOPMENT D.A., INC.;
J.K. Long; and Nick Profaci,
Defendants-Appellees.**

No. 81-1894.

United States Court of Appeals,
Tenth Circuit.

Sept. 13, 1983.

---

Donald T. Trinen, Denver, Colo., for plaintiff-appellant.

Stephen C. Rench, Denver, Colo. (Robin N. Loeb of Garland, Nuckolls & Catts, P.C.

Atlanta, Ga., with him on the brief), for defendants-appellees.

Before SETH, Chief Judge, and McWILLIAMS and BREITENSTEIN, Circuit Judges.

McWILLIAMS, Circuit Judge.

East Vail Townhomes, Inc., a Colorado corporation with its principal place of business in Colorado, brought suit in the United States District Court for the District of Colorado against Eurasian Development D.A., Inc., a Georgia corporation. Additional parties defendant were J.K. Long and Nick Profaci, both citizens of Georgia, who, according to the complaint, were agents for Eurasian Development. Service on the three defendants was made in Georgia, purportedly pursuant to the Colorado long-arm statute, C.R.S. (1973) § 13–1–24. The defendants filed individual answers, and each then filed a motion to dismiss on the ground the district court lacked *in personam* jurisdiction.

When the motions to dismiss came on for hearing, counsel for East Vail failed to appear. Counsel for the three defendants was present and prepared to argue the motions. The district court declined to wait further for plaintiff's counsel to appear, and, without any argument, granted the defendants' motions to dismiss and entered judgment dismissing the complaint and the action. The basis for the district court's dismissal order, as we understand it, was a belief that the jurisdictional allegations of the complaint were insufficient to bring the proceeding within the purview of the Colorado long-arm statute, and, alternatively, that if defendants' actions were sufficiently pled in the complaint to bring the proceeding within the purview of the Colorado long-arm statute, such would offend traditional notions of fair play and substantial justice and would be in violation of the Fourteenth Amendment. The plaintiff, East Vail, appeals. We reverse.

In diversity cases, such as the present one, state law determines whether a nonresident defendant is subject to proc-

ess in the state, and federal decisions are important only in ascertaining whether state law is within constitutional bounds. *Litvak Meat Company v. Baker,* 446 F.2d 329 (10th Cir.1971). Under Colorado law, a nonresident may be subject to the jurisdiction of state courts when the criteria set forth in the long-arm statute are met. C.R.S. § 13-1-124 (1973, as amended). That statute, in pertinent part, provides as follows:

"(1) engaging in any act enumerated in this section by any person, whether or not a resident of the State of Colorado, ... submits such person, ... to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state; (or)

(b) The commission of a tortious act within this state; ..."

In construing the Colorado long-arm statute, the Colorado courts have uniformly held that it was the intent of the legislature to provide for the exercise of state jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968) and *Mr. Steak, Inc. v. District Court,* 194 Colo. 519, 574 P.2d 95 (1978).

The statute above quoted provides, in essence, that a nonresident of Colorado submits himself to the jurisdiction of the courts of Colorado as to a cause of action which arises from: (1) the transaction of any business within the state, or (2) the commission of a tortious act within the State of Colorado. As indicated, the district court initially held that the jurisdictional allegations in the complaint were insufficient to bring the action within the purview of the Colorado long-arm statute. There was no evidentiary hearing in connection with the motions to dismiss, which attacked the sufficiency of the jurisdictional allegations in the complaint. In this regard, see *Pioneer Astro Industries, Inc. v. District Court,* 193 Colo. 409, 566 P.2d 1067 (1977), where the Colorado Supreme Court stated that a plaintiff need only make a *prima facie* showing of "threshhold jurisdiction" and that such may be determined from the allegations of the complaint. So, our initial task is to determine the correctness of the district court's holding that the actions of the defendants as described in the complaint were insufficient to trigger the Colorado long-arm statute. Our study of the complaint indicates that the district court erred in so holding.

From the complaint we learn that East Vail Townhomes, Inc. is a Colorado corporation which owns land in Eagle County, Colorado, on which it proposes to construct condominiums and townhouses for purposes of sale. In connection with such venture East Vail was in need of permanent financing. Early in 1980, Marc N. Geman, president of East Vail, learned from a third party that Eurasian Development D.A., Inc., a Georgia corporation, might be able to locate a suitable source for such financing. Eurasian, we are told, is in the business of locating construction funds for others and receiving a commission in return for its services.

According to the complaint, early in April, 1980, Geman, the president of East Vail, talked with J.K. Long, one of the defendants, who held himself out to be the president of Eurasian. Although it is not entirely clear, it would appear that this initial contact was by telephone, with Geman being in Colorado and Long in Georgia. Their discussion concerned the possibility that Eurasian might agree to attempt to locate financing for East Vail's project in Eagle County. As a result of this and other telephone discussions, it was agreed that Nick Profaci, another defendant, also held out to be an agent for Eurasian, would come to Colorado for the purpose of inspecting the Eagle County property and negotiating an agreement whereby Eurasian would attempt to locate funds for East Vail.

In line with these prior discussions, Profaci, on behalf of Eurasian and Long, came to Colorado on May 15, 1980. While in Colorado, Profaci and Geman drove to Vail, Colorado, where Profaci inspected the prop-

erty owned by East Vail. There, according to the complaint, Profaci and Geman negotiated an agreement, which was later reduced to writing and executed by Geman for East Vail at Denver, Colorado.

The agreement between East Vail and Eurasian, according to the complaint, provided that Eurasian would endeavor to obtain a loan for East Vail in the amount of $6,000,000. In exchange for obtaining such a commitment, East Vail agreed to pay Eurasian a commission in the amount of $120,000. Further, the agreement provided that Eurasian would only have until July 15, 1980, to obtain such a loan.

On their return to Denver from Vail, according to the complaint, Geman gave Profaci the sum of $20,000, which sum represented a good faith earnest money deposit and was to be applied against the total commission due Eurasian, should a lender be located. As concerns the $20,000, the further understanding was that if Eurasian failed to obtain a lender by July 15, 1980, the $20,000, less documented expenses incurred in attempting to obtain the loan, would be "returned to East Vail."

Eurasian failed to obtain financing for East Vail, and the latter asked that the $20,000 deposit be returned. When Eurasian failed to return the $20,000, East Vail filed the present proceeding against Eurasian, Long, and Profaci. The complaint set forth four claims for relief, including breach of contract, unjust enrichment, conversion, and fraud. The allegations in the fraud count were that when the $20,000 was received, the defendants had an "undisclosed intention ... not to perform their obligations under the Agreement at the time it was entered into [and that such] constitutes a fraud and deceit perpetrated by them on East Vail."

■ Under the Colorado long-arm statute, a nonresident, such as these defendants, submits himself, or itself, to jurisdiction of the courts of Colorado as to any cause of action arising out of the "transaction of any business within the state" or arising out of "the commission of a tortious act within the state." Under the four corners of the complaint, did the defendants transact *any* business within the confines of the State of Colorado, or did they commit a tortious act within the State? It is quite obvious to us that they most definitely did. We do not regard this as being even a close case. Many Colorado cases have upheld *in personam* jurisdiction over nonresidents who had substantially less contacts within the state than these defendants. In support of our determination that the defendants in the present proceeding are within the purview of the Colorado long-arm statute, see such cases as *Mr. Steak, Inc. v. District Court,* 194 Colo. 519, 574 P.2d 95 (1978); *Van Schaack & Co. v. District Court,* 189 Colo. 145, 538 P.2d 425 (1975); and *Safari Outfitters, Inc. v. Superior Court,* 167 Colo. 456, 448 P.2d 783 (1968).

■ As indicated at the outset, the district court found, alternatively, that if the defendants by their actions came within the purview of the Colorado long-arm statute, such would offend "traditional notions of fair play and substantial justice" and therefore violated the due process clause. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This alternative holding is also in error. If the defendants can come from Georgia to Colorado and, within the boundaries of this state, execute a contract and receive as earnest money the sum of $20,000, it does not offend our sense of fair play to require the defendants to appear in a federal district court in Colorado when a dispute arises over the return of the $20,000.

Judgment reversed and cause remanded with directions that the order of dismissal be vacated.