Timothy A. GOGNAT, Plaintiff–
Appellant,

v.

Chet J. ELLSWORTH, Joanne Ellsworth,
MSD Energy, Inc., and Stephen Smith,
Defendants–Appellees.

Nos. 08CA1158, 08CA1745.

Colorado Court of Appeals,
Div. VII.

Sept. 17, 2009.

Rehearing Denied Oct. 15, 2009.

Irwin & Boesen, P.C., Bradley R. Irwin, Christopher L. Ingold, Denver, Colorado, for Plaintiff–Appellant.

David L. McCarl, Denver, Colorado; John P. Lange, Denver, Colorado, for Defendants–Appellees Chet J. Ellsworth, Joanne Ellsworth, and MSD Energy, Inc.

Hall & Evans, L.L.C., Bruce A. Menk, Michael W. Jones, Alan Epstein, Denver, Colorado, for Defendant–Appellee Stephen Smith.

Opinion by Judge J. JONES.

Plaintiff, Timothy A. Gognat, appeals the district court's summary judgment in favor of defendant Stephen Smith, dismissal of his complaint against defendants Chet J. Ellsworth, Joanne Ellsworth, and MSD Energy, Inc. (collectively, the nonresident defendants), and award of attorney fees to the nonresident defendants. We conclude that the district court properly entered summary judgment for Mr. Smith because the statute of limitations on Mr. Gognat's claims expired before he commenced this action. We also conclude that the district court lacked personal jurisdiction over Ms. Ellsworth and MSD, and therefore the district court properly dismissed Mr. Gognat's claims against them. However, we conclude that Mr. Gognat established a prima facie case of the court's personal jurisdiction over Mr. Ellsworth. Nonetheless, because he too would be entitled to summary judgment due to the expiration of the statute of limitations, we ultimately affirm the judgment in his favor. We vacate the award of attorney fees and remand the case to the district court for a redetermination of Ms. Ellsworth's and MSD's motion for attorney fees and a determination of their reasonable attorney fees incurred on appeal.

## I. Background

Mr. Gognat alleged that in 1997 he shared trade secrets with Mr. Ellsworth (whom he had met through Mr. Smith) that would allow them to identify and develop reserves of producible oil and natural gas in western Kentucky. Mr. Gognat subsequently became concerned that Mr. Ellsworth and Mr. Smith were misappropriating his trade secrets by acquiring leases in western Kentucky without paying him compensation. In February 2002, Mr. Gognat threatened to sue Mr. Ellsworth and Mr. Smith for their alleged misappropriation of trade secrets pertaining to a twenty-five square mile area he refers to as the "first area" or the "Farmersville Dome" area, located in Caldwell County, Kentucky. Mr. Gognat decided, however, not to pursue a lawsuit against them at that time.

More than three years later, on December 19, 2005, Mr. Gognat filed a complaint against defendants, asserting numerous claims, all of which are based on defendants' alleged misappropriation of his trade secrets regarding the identification and development of producible oil and natural gas reserves in western Kentucky. Therein, he specifically alleged that he became aware in the summer of 2005 that defendants were misappropriating his trade secrets to obtain leases for natural gas reserves in a different and larger area in western Kentucky, which he refers to as the "second area," consisting of portions of Lyon, Livingston, Crittenden, and Caldwell Counties.

When Mr. Gognat filed this suit, Mr. Smith was a Colorado resident, Mr. and Ms. Ellsworth were residents of Florida, and MSD was a Wyoming corporation doing business in Kentucky. Mr. Gognat did not serve any of the nonresident defendants in Colorado.

The nonresident defendants filed a C.R.C.P. 12(b)(2) motion with supporting affidavits to dismiss for lack of personal jurisdiction. The district court granted that motion, finding that it had neither general nor specific personal jurisdiction over the nonresident defendants. The court subsequently awarded attorney fees to the nonresident defendants pursuant to section 13–17–201, C.R.S. 2008, because the action (which sounded in tort) had been dismissed under C.R.C.P. 12(b) before trial.

Mr. Smith moved for summary judgment. He argued that Mr. Gognat's claims were barred by the three-year statute of limitations applicable to claims for misappropriation of trade secrets, section 7–74–107, C.R.S. 2008. The district court initially denied that motion. However, after Mr. Gognat was deposed for a second time, Mr. Smith filed a motion for reconsideration of the district court's order denying his motion for summary judgment, citing Mr. Gognat's new deposition testimony. The district court heard argument on the motion at the trial management conference. The court concluded that Mr. Gognat's deposition testimony demonstrated that he knew about Mr. Smith's alleged misappropriation of trade secrets more than three years before he filed suit, and therefore his claims against Mr. Smith were barred by the statute of limitations.

## II. Discussion

### A. Statute of Limitations

Mr. Gognat contends that the district court erred in granting Mr. Smith's motion for summary judgment on statute of limitations grounds. We conclude, however, that the district court properly granted summary judgment in Mr. Smith's favor.

"Summary judgment is proper if the pleadings and supporting documentation show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Hamon Contractors, Inc. v. Carter & Burgess, Inc.,* —— P.3d ——, ——, 2009 WL 1152160 (Colo.App. Nos.07CA0987, 07CA0988, 07CA2342, Apr. 30, 2009) (citing *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 71 (Colo.2004)). "A material fact is one that will affect the outcome of the case.... Once the movant shows the absence of a genuine issue of material fact, the burden shifts to the nonmovant to show that a dispute exists concerning a material fact." *Western Innovations, Inc. v. Sonitrol Corp.,* 187 P.3d 1155, 1158 (Colo.App. 2008) (citation omitted).

We review a district court's order granting summary judgment de novo. *Jenkins v. Panama Canal Ry. Co.,* 208 P.3d 238, 241 (Colo.2009); *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002).

Mr. Gognat raises four specific challenges to the summary judgment: (1) there is a genuine issue of material fact whether he discovered Mr. Smith's misappropriation of his trade secrets more than three years before he commenced this action; (2) the law of the case doctrine precluded the district court from granting summary judgment; (3) the court should not have ruled on Mr. Smith's motion to reconsider the court's summary judgment order during the trial management conference, before the deadline to file a response to Mr. Smith's motion to reconsider had expired; and (4) there is a genuine issue of material fact whether the statute of limita-

tions was equitably tolled. We reject each of these contentions in turn.

### 1. Accrual Under the Statute

Section 7–74–107, adopted from the Uniform Trade Secrets Act (UTSA), provides:

> An action for misappropriation of a trade secret shall be brought within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

■■■ "We interpret a statute of limitations consistently with its purpose of promoting justice, avoiding unnecessary delay, and preventing the litigation of stale claims." *Murry v. GuideOne Specialty Mut. Ins. Co.,* 194 P.3d 489, 491 (Colo.App.2008) (citing *Morrison v. Goff,* 91 P.3d 1050, 1052 (Colo. 2004)). "The point of accrual is usually a question of fact, but if the undisputed facts clearly show when a plaintiff discovered or should have discovered the damage or conduct, the issue may be decided as a matter of law." *Id.* " 'The critical inquiry of when an action accrues is knowledge of the facts essential to the cause of action, not knowledge of the legal theory upon which the action may be brought.' " *Olson v. State Farm Mut. Auto. Ins. Co.,* 174 P.3d 849, 854 (Colo. App.2007) (quoting *Winkler v. Rocky Mountain Conference,* 923 P.2d 152, 159 (Colo.App. 1995)).

■■■ In construing section 7–74–107, the United States Court of Appeals for the Tenth Circuit has held that "the statute of limitations on trade secret misappropriation claims begins to run not when a plaintiff can positively and directly prove misappropriation rather than independent development, but simply when the plaintiff has knowledge of sufficient facts from which a reasonable jury could infer misappropriation." *Chasteen v. UNISIA JECS Corp.,* 216 F.3d 1212, 1218 (10th Cir.2000).[1] We agree with this con-

---

1. The statutory definition of "misappropriation" includes either disclosure or use of a trade secret in contravention of a duty to maintain its secrecy. § 7–74–102(2)(b)(II), C.R.S.2008. Mr. Gognat appears to have alleged primarily use, though in paragraph 115 of his Complaint he also alleged, on information and belief only, that defendants had divulged the trade secrets to others. The distinction is unimportant in this case. For purposes of his motion for summary judgment,

struction of the statute. The question in this case, however, is how the accrual date is determined when a party alleges multiple misappropriations of one trade secret or multiple, but related trade secrets. Specifically, where a plaintiff alleges more than one misappropriation of a trade secret or related trade secrets by the same party, is there a single accrual date coinciding with the first misappropriation, or are there separate accrual dates coinciding with the dates of each misappropriation? Mr. Gognat contends that he did not discover the misappropriation of his trade secrets as to the "second area" until 2005, and therefore his filing was timely. In effect, he argues that regardless whether a claim for any misappropriation as to the "first area" is barred by the statute of limitations, his claims for misappropriation as to the "second area" did not accrue until 2005— that is, that there are multiple accrual dates. We conclude, however, that his argument is based on an incorrect construction of section 7–74–107: we construe the statute to provide for a single accrual date for multiple misappropriations of a single trade secret or of multiple, related trade secrets, coinciding with the first date a plaintiff has knowledge of sufficient facts from which a jury could reasonably infer misappropriation. We further conclude that there is no genuine issue of material fact precluding summary judgment.

As noted, section 7–74–107 provides that for purposes of the statute of limitations, "a continuing misappropriation constitutes a single claim." In so providing, the statute expressly rejects the "continuing violation" theory under which continued disclosure or use of a trade secret could be regarded as · permitting claims for misappropriations occurring within the limitations period, even if prior misappropriations are not actionable, or permitting a claim for all misappropriations so long as one occurred within the limitations period. *See also* Unif. Trade Secrets Act § 6 Comment, 14 U.L.A. 649–50 (2005) ("This Act rejects a continuing wrong approach to the statute of limitations...."). This evinces a clear legislative intent that multiple misap-

propriations by the same party be treated as "a single claim" for accrual purposes.

In *Intermedics, Inc. v. Ventritex, Inc.*, 822 F.Supp. 634 (N.D.Cal.1993), the court interpreted California's identical three-year statute of limitations provision for misappropriation of trade secrets, which was also taken from the UTSA. *Id.* at 643. The plaintiff first sued the defendants in 1985 for an alleged disclosure of trade secrets related to an implantable defibrillator. *Id.* at 637. The plaintiff voluntarily dismissed that action. *Id.* Four years later, the plaintiff brought a second suit alleging claims of the same general nature, based on different and subsequent incidents of trade secret misappropriation. *Id.* at 638–39.

In granting the defendants' motion for summary judgment, the court concluded that when the statute of limitations began to run on claims for misappropriation of some alleged trade secrets, it simultaneously began to run as to any alleged misappropriation of other, related secrets, even if no acts of misappropriation of the other secrets had yet occurred. *Id.* at 658. The court reasoned as follows:

> The underlying principle appears to be that once [a] plaintiff knows or should know that a defendant who once was trusted has shown, by any act of misappropriation, that he cannot be trusted, plaintiff should understand that there is a risk that that defendant will commit additional acts of misappropriation, whether they involve repeated misappropriations of one trade secret or initial misappropriations of other confidences.

*Id.* at 654. The court added:

> [T]he law's primary concern is to protect against breaches in or to restore the integrity of confidential relationships. Primacy of that concern suggests a fear that any break in the underlying integrity of a particular relationship puts at risk all the confidences that were shared during that relationship. A law based on these concerns would impose on plaintiffs a responsibility to take prompt and assertive corrective action with respect to all of

Mr. Smith assumed that Mr. Gognat had alleged trade secrets. We will as well.

plaintiffs' interests whenever plaintiffs detect a fracture in a once confidential relationship.

*Id.*

Based on essentially the same reasoning, other courts have ruled similarly that when the defendant allegedly engaged in multiple acts of misappropriation involving the same trade secret, the statute begins to run from the first disclosure or use. *See, e.g., Monolith Portland Midwest Co. v. Kaiser Aluminum & Chem. Corp.,* 407 F.2d 288, 292 (9th Cir.1969) (applying California common law of trade secrets; holding that cause of action accrued when the defendant first made adverse use or disclosure of the trade secret in violation of its confidential relationship, and rejecting the contention that each subsequent use gave rise to a new claim); *Adcor Indus., Inc. v. Bevcorp, LLC,* 411 F.Supp.2d 778, 786 (N.D.Ohio 2005) (applying Ohio's UTSA statute of limitations), *aff'd,* 252 Fed.Appx. 55, 2007 WL 3104796 (6th Cir.2007); *Cadence Design Sys., Inc. v. Avant! Corp.,* 29 Cal.4th 215, 127 Cal.Rptr.2d 169, 57 P.3d 647, 651 (2002) (interpreting UTSA statute of limitations provision, and stating, "[A] claim for misappropriation of a trade secret arises for a given plaintiff against a given defendant only once, at the time of the initial misappropriation.... Each new misuse or wrongful disclosure is viewed as augmenting a single claim of continuing misappropriation rather than as giving rise to a separate claim.") (emphasis omitted).

Mr. Gognat attempts to distinguish *Intermedics* by arguing that the misappropriation there was *disclosure* of trade secrets, not *use* of trade secrets as in this case. This distinction makes no difference: misappropriation under the UTSA is defined to include either disclosure or use. § 7-74-102(2)(b). There is no hint in the statute that the accrual of the limitations period is different depending on the nature of the misappropriation. Further, the allegations in *Intermedics* concerned both disclosure and use. *See Intermedics,* 822 F.Supp. at 639. There is no indication in that decision that the court's ruling was limited to the former. The court granted summary judgment on all claims.

It is unclear whether Mr. Gognat alleged multiple misappropriations of a single trade secret or multiple misappropriations of multiple (but related) trade secrets. In his complaint, for example, he appears to have alleged one trade secret—a method for identifying and developing producible oil and natural gas reserves in western Kentucky. However, in other district court filings and in his briefs on appeal he has generally referred to multiple "trade secrets," though he has been less than clear as to how one differs from the other. As the authority cited above demonstrates, any such distinction makes no difference as far as the application of the statute of limitations is concerned. We therefore conclude that all of Mr. Gognat's claims accrued when he first had reason to know that defendants had misappropriated a trade secret.

Applying this construction of the statute, we also conclude that his claims are barred by the statute of limitations. There is no genuine issue of material fact that Mr. Gognat was aware that Mr. Smith allegedly had misappropriated his trade secrets before December 19, 2002. The undisputed evidence on this point includes the following:

● Mr. Gognat disclosed the trade secrets to Mr. Ellsworth and Mr. Smith in 1997, and admitted in his deposition that he knew in 1997 that Mr. Ellsworth was acquiring leases but not compensating him.

● Mr. Gognat stated in his deposition, "What I did know in 1997 was that Mr. Ellsworth was acquiring leasehold[s] based on my pointing him to that area through my work. I didn't know the extent of Mr. Smith's involvement with him, but I do know that any project that Mr. Ellsworth had been involved with up to that point, Mr. Smith was also involved with him on it."

● Mr. Gognat stated in his deposition that he knew in 1999 that Mr. Ellsworth and Mr. Smith were misusing his trade secrets.

● Mr. Gognat's brother sent e-mails to Mr. Ellsworth and Mr. Smith on February 26, 2002 and February 28, 2002 threatening a lawsuit against them for "usurpa-

tion of proprietary data." Mr. Gognat was copied on those e-mails.

- Mr. Gognat sent e-mails to Mr. Smith on February 5, 2002 and March 13, 2002 accusing Mr. Smith and Mr. Ellsworth of misappropriating the information he had provided to them, and threatening litigation.

It makes no difference that Mr. Smith allegedly continued to misappropriate the trade secrets, even if, as Mr. Gognat alleges, he later did so to a greater extent in a larger, different area in western Kentucky. Mr. Gognat was aware no later than 1999 (if not sooner) that Mr. Smith was using his trade secrets, and he reasonably could have foreseen additional use based on the breach of their confidential relationship. Therefore, the district court correctly granted summary judgment in Mr. Smith's favor based on the statute of limitations.[2]

### 2. Law of the Case

The law of the case did not preclude the district court from reconsidering its earlier denial of Mr. Smith's summary judgment motion.

■■■ "A prior ruling on a question of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation." *City of Aurora v. Allen*, 885 P.2d 207, 212 (Colo.1994); *accord Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 243 (Colo.2003). However, the law of the case doctrine is "merely discretionary when applied to a court's power to reconsider its own prior rulings." *Giampapa*, 64 P.3d at 243; *see also Ranger Ins. Co. v. Dist. Court*, 647 P.2d 1229, 1231 (Colo.1982) ("a court always retains the inherent power to reconsider a prior ruling as long as the motion is made in a timely fashion").

■■ The district court did not abuse its discretion to reconsider its prior ruling because Mr. Smith submitted new facts—Mr. Gognat's testimony in his second deposi-

tion—which justified a different conclusion. *See Allen*, 885 P.2d at 212.

### 3. The Timing of the Ruling

■■■ Nor are we persuaded by Mr. Gognat's contention that the district court erred in ruling on Mr. Smith's motion for reconsideration at the trial management conference, before the deadline for filing a response had expired.

Though the district court granted Mr. Smith's motion for reconsideration before Mr. Gognat responded in writing, Mr. Gognat presented his arguments against the motion at the trial management conference. And, the court reviewed the materials Mr. Gognat subsequently submitted in support of his motion for reconsideration of the summary judgment, determining that "[t]he general tenor of the arguments made in [Mr. Gognat's motion for reconsideration] were expressly considered and rejected by the Court in the prior summary judgment ruling."

Therefore, Mr. Gognat was not prejudiced by the court's decision to rule on the motion for summary judgment at the trial management conference. *Cf. Svendsen v. Robinson*, 94 P.3d 1204, 1206 (Colo.App.2004) (premature ruling on motion to strike expert was harmless error where the opposing party had an opportunity to present arguments in a motion for reconsideration), *overruled on other grounds by Trattler v. Citron*, 182 P.3d 674 (Colo.2008); *Ferrera v. Nielsen*, 799 P.2d 458, 460 (Colo.App.1990) (any error by the court in entering summary judgment for a reason not raised by the parties was harmless where the court gave the plaintiff an opportunity to respond to the new issue after the ruling).

### 4. Equitable Tolling

We also reject Mr. Gognat's contention that there is a genuine issue of material fact

---

**2.** Though Mr. Gognat contends that the district court failed to consider corrections to his deposition, he merely points us to a place in the record where he informed the district court of those corrections. He makes no specific argument as to how any particular correction precluded sum-

mary judgment. In any event, those corrections merely differentiated between the two specific areas in western Kentucky in which Mr. Gognat contends defendants acquired leases. For the reasons discussed above, that distinction does not preclude summary judgment.

whether Mr. Smith's alleged misconduct equitably tolled the running of the statute of limitations.

 Equitable tolling is applied to prevent a defendant from asserting a statute of limitations defense where the defendant's wrongful conduct prevented the plaintiff from asserting a timely claim, or where extraordinary circumstances rendered the filing a claim within the statutory period impossible. *Olson,* 174 P.3d at 858 (citing *Dean Witter Reynolds, Inc. v. Hartman,* 911 P.2d 1094, 1096–97 (Colo.1996)). The doctrine of equitable tolling is not favored and is only applied when all of its elements are clearly shown. *Id.* The elements of equitable tolling are:

> (1) the party to be estopped must know the relevant facts; (2) the party to be estopped must intend that his or her conduct be acted on, or act in a manner that the party asserting estoppel believes the party to be estopped has such intent; (3) the party asserting estoppel must be ignorant of the relevant facts; and (4) the party asserting estoppel must rely on the other party's conduct to his or her detriment.

*Id.* (citing *Dove v. Delgado,* 808 P.2d 1270, 1275 (Colo.1991)).

 The plaintiff has the burden of establishing these elements. *Garrett v. Arrowhead Improvement Ass'n,* 826 P.2d 850, 855 (Colo.1992).

 Mr. Gognat presented no evidence indicating that Mr. Smith engaged in any conduct intended to deceive him about the limitations period. Nor did Mr. Gognat present any evidence that Mr. Smith acted in any way to impede him from bringing an action. He alleged only that after the dispute arose about the "first area," Mr. Smith assured him things would be worked out fairly and that Mr. Smith did not tell him that defendants were obtaining leases in the "second area."

As discussed above, according to his own deposition testimony, Mr. Gognat knew in 1997 that Mr. Ellsworth and (likely) Mr. Smith were using his trade secrets to acquire leaseholds in western Kentucky. In Mr.

Gognat's motion for reconsideration of the summary judgment, his counsel conceded that he did not file a claim at that time simply because "life is too short." These undisputed facts belie any claim of equitable tolling.

### B. Personal Jurisdiction

Mr. Gognat contends that the district court erred in finding that it lacked personal jurisdiction over the nonresident defendants. Our analysis and conclusion with respect to the statute of limitations would apply with equal force to the claims against the nonresident defendants, seemingly rendering a decision as to the correctness of the district court's dismissal of those claims unnecessary. However, we must address Mr. Gognat's arguments regarding personal jurisdiction because the nonresident defendants were awarded attorney fees only because they prevailed on a motion to dismiss before trial, *see* § 13–17–201, and Mr. Gognat challenges the propriety of that award. As to Ms. Ellsworth and MSD, we are not persuaded by any of Mr. Gognat's arguments. We conclude however, that Mr. Gognat established a prima facie case of the court's personal jurisdiction over Mr. Ellsworth.

### 1. Standard of Review

 A court has discretion whether to address a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction on documentary evidence alone or by holding a hearing. *Goettman v. N. Fork Valley Restaurant,* 176 P.3d 60, 65 (Colo.2007); *Archangel Diamond Corp. v. Lukoil,* 123 P.3d 1187, 1192 (Colo. 2005). Where, as here, a court decides the motion only on documentary evidence, "the plaintiff need only demonstrate a prima facie showing of personal jurisdiction to defeat the motion." *Archangel Diamond Corp.,* 123 P.3d at 1192. The plaintiff meets this burden when he raises a reasonable inference, whether in the complaint or in other documentary evidence, that the court has jurisdiction over the defendant. *Goettman,* 176 P.3d at 66; *Archangel Diamond Corp.,* 123 P.3d at 1192. "[T]he allegations in the complaint must be accepted as true to the extent that they are not contradicted by the defendant's

competent evidence, and where the parties' competent evidence presents conflicting facts, these discrepancies must be resolved in the plaintiff's favor." *Archangel Diamond Corp.*, 123 P.3d at 1192.

■ To assess whether Mr. Gognat made a prima facie showing of personal jurisdiction over the nonresident defendants, we must review the documentary evidence in this case according to the requirements of due process. *Goettman*, 176 P.3d at 68. "Due process requires us to review the documentary evidence for either general or specific jurisdiction. If we find either type of jurisdiction, then due process requires us to determine whether the exercise of personal jurisdiction over the defendant is reasonable." *Id.* (citations omitted).

■ We review a dismissal based on documentary evidence de novo. *Id.*

### 2. Requirements of Due Process and the Long–Arm Statute

■ A plaintiff seeking to invoke a Colorado court's jurisdiction against a nonresident defendant must comply with the requirements of both due process and Colorado's long-arm statute, section 13–1–124, C.R.S.2008. *Goettman*, 176 P.3d at 66–67. "Due process prohibits the exercise of personal jurisdiction over a nonresident defendant unless the defendant has 'certain minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* at 67 (quoting in part *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). "'It is essential that there be some action by which the defendant purposefully avails himself of the privilege of conducting activities in the forum state' so that he will not be subject to personal jurisdiction solely as a result of 'random or fortuitous' contacts or the 'unilateral activity' of a third party." *Id.* (quoting *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1271 (Colo.2002)).

■ "The quantity and nature of minimum contacts required for a court to exercise personal jurisdiction over a defendant depends upon whether the plaintiff has alleged that the court has general or specific jurisdiction over the defendant." *Id.* General jurisdiction exists if the defendant conducted continuous and systematic business activities in the forum state. *Id.; Keefe*, 40 P.3d at 1271. Specific jurisdiction exists if the alleged injuries "'arise out of or relate to' activities that are significant and purposefully directed by the defendant at residents of the forum." *Keefe*, 40 P.3d at 1271 (quoting in part *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *accord Goettman*, 176 P.3d at 67; *Archangel Diamond Corp.*, 123 P.3d at 1194.

■ "Because the General Assembly intended for our long-arm statute to confer the maximum jurisdiction permitted by the due process clauses ..., we necessarily address the requirements of the long-arm statute when we engage in constitutional due process analysis." *Archangel Diamond Corp.*, 123 P.3d at 1193; *see Goettman*, 176 P.3d at 67 ("[I]f jurisdiction is consistent with due process, then Colorado's long-arm statute authorizes jurisdiction over the defendant.").

As relevant here, the long-arm statute provides:

(1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:

(a) The transaction of any business within this state;

(b) The commission of a tortious act within this state; [or]

(c) The ownership, use, or possession of any real property situated in this state. . . .

§ 13–1–124(1)(a)–(c).

Mr. Gognat contends he established that the district court has both general and specific jurisdiction over the nonresident defendants. We address each in turn.

### 3. General Jurisdiction

■■ General jurisdiction is predicated on contacts with the forum state other than

those out of which the litigation arises. " 'However, because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.' " *Archangel Diamond Corp.*, 123 P.3d at 1194 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998)).

 The nonresident defendants attached two affidavits by Mr. Ellsworth to their motion to dismiss, one he executed individually and one he executed as president of MSD. Therein, Mr. Ellsworth stated that he met Mr. Gognat in Denver in 1997; that he met with Mr. Gognat on a few occasions to discuss, among other things, Mr. Gognat's claimed interest in oil and gas leases in western Kentucky; and that he had communicated with Mr. Gognat via e-mail and telephone from 1997 through the first part of 2002 while Mr. Gognat was in Denver or Indiana concerning oil and gas exploration in Illinois, the Netherlands, and Kentucky. As to MSD, Mr. Ellsworth stated that MSD had not engaged in business in Colorado, had no agent designated to accept service of process in Colorado, was not authorized to conduct business in Colorado, and had no property or financial interests in Colorado. Ms. Ellsworth also submitted an affidavit in which she stated that she had not engaged in any business activities in Colorado since she and Mr. Ellsworth had moved to South Dakota in 1995.

Mr. Gognat alleged that Mr. Ellsworth "conducted business activities in Colorado, Kentucky and elsewhere," received "confidential information" from Mr. Gognat in 1997, owned real property in Colorado, and "regularly travel[ed] to [Colorado] to attend conferences ... and conduct business...." However, he did not provide any specific allegations regarding Mr. Ellsworth's general business contacts in Colorado, nor did he allege any actions of Mr. Ellsworth by virtue of owning real property in Colorado that might constitute systematic and continuous general business contacts with Colorado.

As to Ms. Ellsworth and MSD, Mr. Gognat alleged only that they "conducted business in Colorado, Kentucky and elsewhere." Again, he provided no specific allegations supporting that conclusory allegation. And, he provided no allegations rebutting any of the relevant assertions in the nonresident defendants' affidavits.

We therefore conclude that the documentation submitted by Mr. Gognat did not raise a reasonable inference that the nonresident defendants had continuous and systematic general business contacts in Colorado sufficient to demonstrate a prima facie case of the court's general jurisdiction over them. *See Goettman*, 176 P.3d at 68.

### 4. Specific Jurisdiction

Mr. Gognat contends that the nonresident defendants were subject to specific jurisdiction under the long-arm statute by virtue of (1) transacting business in Colorado, (2) committing tortious acts in Colorado, or (3) conspiring with a Colorado resident, Mr. Smith. We agree that Mr. Gognat established a prima facie case of the court's specific jurisdiction over Mr. Ellsworth by virtue of transacting business in Colorado, but otherwise reject these contentions.

 The minimum contacts analysis for specific jurisdiction is a two-part inquiry: "(1) whether the defendant 'purposefully directed' his activities at the residents of the forum state; and (2) whether the litigation 'arises out of 'the defendant's forum-related conduct." *Goettman*, 176 P.3d at 69 (quoting in part *Keefe*, 40 P.3d at 1271). The "arises out of" prong of the specific jurisdiction test is satisfied when the actions of the defendant giving rise to the litigation have created a "substantial connection" with the forum state. *Archangel Diamond Corp.*, 123 P.3d at 1194; *Keefe*, 40 P.3d at 1271.

#### a. Transaction of Business

 Mr. Gognat argues that he demonstrated that the court had specific jurisdiction over Mr. Ellsworth under subsection 13–1–124(1)(a) (transacting any business within Colorado) because: (1) Mr. Ellsworth came to Colorado to meet with him on several

occasions in 1997 regarding the trade secrets; (2) he divulged the trade secrets to Mr. Ellsworth during these meetings; (3) he entered into a joint venture with Mr. Ellsworth "[w]hen the trade secrets were shared"; and (4) Mr. Ellsworth had numerous contacts with him via e-mail and telephone about the subject matter of the joint venture. In essence, Mr. Gognat contends that Mr. Ellsworth's agreement to enter into a joint venture with him is sufficient to establish specific personal jurisdiction in Colorado. Under the circumstances here, we agree.

█ A defendant does not subject himself to jurisdiction in the forum state merely by entering into an agreement with a resident of the forum state. *New Frontier Media, Inc. v. Freeman,* 85 P.3d 611, 614 (Colo.App. 2003); *see also Burger King Corp.,* 471 U.S. at 473, 105 S.Ct. 2174. "Instead, to confer jurisdiction, the contract typically must either require activity by the defendant in the forum state, ... have been negotiated in-state pursuant to substantial and significant contacts, ... have been executed by the defendant in-state, ... or have been solicited by the out-of-state defendant...." *New Frontier Media,* 85 P.3d at 614 (citations omitted).

Contrary to Mr. Ellsworth's contention, Mr. Gognat did not allege merely an agreement with a Colorado resident. Rather, he alleged, either expressly or by reasonable inference, that Mr. Ellsworth came to Colorado to talk about forming a joint venture with him involving the use of his trade secrets, and that they agreed to such a joint venture during these meetings. Mr. Gognat therefore established a prima facie case of specific jurisdiction over Mr. Ellsworth under subsection (1)(a) of the long-arm statute. *Cf. East Vail Townhomes, Inc. v. Eurasian Development D.A., Inc.,* 716 F.2d 1346, 1348–49 (10th Cir.1983) (where agreement was negotiated and executed in Colorado, court had personal jurisdiction over nonresident) (applying Colorado law); *Halliburton Co. v. Texana Oil Co., Inc.,* 471 F.Supp. 1017, 1018–19 (D.Colo.1979) (same); *Mr. Steak, Inc. v. Dist. Court,* 194 Colo. 519, 520–22, 574 P.2d 95, 96–97 (1978) (same); *Duckworth v. M.M.*

*Cole Publ'g Co.,* 38 Colo.App. 33, 34–35, 552 P.2d 520, 520–21 (1976) (same).

We also conclude that subjecting Mr. Ellsworth to the jurisdiction of Colorado courts would be consistent with due process. *See Keefe,* 40 P.3d at 1271 (once minimum contacts have been established, other factors must be considered to determine whether asserting jurisdiction would be consistent with due process). By (allegedly) negotiating and entering into a joint venture agreement in Colorado with a Colorado resident, and regularly communicating with that resident about that joint venture while in Colorado and by telephone and e-mail, Mr. Ellsworth purposefully availed himself of the privilege of conducting activities in Colorado. He did not present a compelling case that some other factor would render jurisdiction unreasonable. *See id.* at 1272. Therefore, asserting jurisdiction over him in Colorado would not offend traditional notions of fair play and substantial justice. *See East Vail Townhomes,* 716 F.2d at 1349.

█ However, Mr. Gognat did not establish a prima facie case of specific personal jurisdiction as to either Ms. Ellsworth or MSD by virtue of the alleged transaction of business in Colorado. As noted, as to these two nonresident defendants, Mr. Gognat alleged only that they conducted business in Colorado. Such a conclusory allegation is insufficient to establish personal jurisdiction based on the transaction of business in the forum state, at least in the face of sworn facts rebutting the allegation. *See Wenz v. Memery Crystal,* 55 F.3d 1503, 1508–09 (10th Cir.1995) (applying the Colorado long-arm statute). We also note that Mr. Gognat did not allege that Mr. Ellsworth was acting on behalf of Ms. Ellsworth or MSD when he came to Colorado to discuss and enter into the joint venture. In fact, he alleged that MSD was not formed until after those events, and he appears to have named Ms. Ellsworth and MSD as defendants based entirely on subsequent acts which occurred outside Colorado.

#### b. Tortious Acts

█ For jurisdiction to exist under the tortious act provision of the long-arm statute,

subsection 13–1–124(1)(b), either the tortious act must occur in Colorado or the resulting injury must occur in Colorado. *Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 235–36 (Colo.1992).

▌ Mr. Gognat's claims are predicated on allegations that the nonresident defendants misappropriated his trade secrets regarding oil and gas reserves in western Kentucky by using those trade secrets to acquire leases and drill in western Kentucky. Therefore, any alleged tortious conduct occurred in Kentucky. *Cf. Wenz*, 55 F.3d at 1507 (concluding no personal jurisdiction existed based on tortious conduct provision of Colorado's long-arm statute where the plaintiff alleged that a London law firm disbursed funds from a London account in London, not Colorado).

▌ Mr. Gognat also failed to demonstrate that he suffered an injury in Colorado sufficient to invoke the long-arm statute. At most, he alleged that, because he is a Colorado resident, and any damages would therefore be payable to him in Colorado, he was injured in Colorado. However, the law is clear that for an injury to be considered to have occurred in Colorado, it "must be direct, not consequential or remote, and loss of profits in the state of plaintiff's domicile is insufficient to sustain long-arm jurisdiction over a nonresident defendant." *Amax Potash Corp. v. Trans–Resources, Inc.*, 817 P.2d 598, 600 (Colo.App.1991) (where anticipated loss of profits from operation of mine in New Mexico was indirect and remote and resulted in economic injury to the plaintiff in Colorado only because it was headquartered in Colorado, there was no injury in Colorado to support Colorado jurisdiction); *see also Nat'l Business Brokers, Ltd. v. Jim Williamson Productions, Inc.*, 115 F.Supp.2d 1250, 1255 (D.Colo.2000) (loss of profits sustained by Colorado resident as a result of tortious conduct of nonresident in another state did not constitute injury so as to subject nonresident to jurisdiction under the long-arm statute), *aff'd*, 16 Fed.Appx. 959, 2001 WL 912796 (10th Cir.2001); *GCI 1985–1 Ltd. v. Murray Prop. P'ship*, 770 F.Supp. 585, 590 (D.Colo. 1991) (dismissing claims against a nonresident defendant for lack of personal jurisdiction where the alleged loss of anticipated profits injured the plaintiff in Colorado "only as a result of the fortuitous circumstance that [the plaintiff] maintained its headquarters in Colorado").

### 5. Conspiracy Jurisdiction

No Colorado appellate court appears to have directly addressed whether personal jurisdiction over a nonresident can be premised on a conspiracy with a resident of Colorado. The closest case is *Pace v. D & D Fuller CATV Constr., Inc.*, 748 P.2d 1314 (Colo.App. 1987), *aff'd*, 780 P.2d 520 (Colo.1989). There, a division of this court appears to have concluded that personal jurisdiction over nonresidents existed, in part, based on the nonresidents' communication by mail with Colorado state agencies in furtherance of a conspiracy and the nonresidents' admissions that damages from the acts, if proved, occurred in Colorado. *Id.* at 1316. In affirming that decision, however, the supreme court merely referred to the conspiracy as an additional alleged fact in support of personal jurisdiction; it did not mention conspiracy as a basis for concluding that the plaintiff had made out a prima facie showing of a tortious act in Colorado by the nonresidents. *D & D Fuller*, 780 P.2d at 522.

▌ We decline Mr. Gognat's invitation for us to adopt the conspiracy jurisdiction theory. Assuming that theory is viable in Colorado, however, we conclude that Mr. Gognat failed to sufficiently allege acts that would support a finding of jurisdiction thereunder. Specifically, he failed to allege acts by a resident coconspirator taken in Colorado in furtherance of the conspiracy.

Regarding conspiracy jurisdiction, the United States Court of Appeals for the Tenth Circuit Court has observed that

"some courts have recognized a 'conspiracy theory of personal jurisdiction,' whereby jurisdiction can be obtained over out-of-state defendants who have conspired with in-state defendants.... But, to sustain jurisdiction over an out-of-state co-conspirator these courts required something more than the presence of a co-conspirator within the forum state, such as substantial acts performed there in furtherance of the con-

spiracy and of which the out-of-state co-conspirator was or should have been aware."

*Am. Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449, 1454 (10th Cir.1983) (quoting *Glaros v. Perse*, 628 F.2d 679, 682 (1st Cir.1980); citations in *Glaros* omitted) (applying Utah law); *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Kozeny*, 115 F.Supp.2d 1231, 1236–37 (D.Colo.2000) (finding conspiracy jurisdiction based on resident co-conspirator's acts in Colorado in furtherance of the conspiracy), *aff'd*, 19 Fed.Appx. 815, 2001 WL 1149327 (10th Cir.2001); *cf. Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan*, 115 F.3d 1020, 1031 (D.C.Cir.1997) (concluding that "the plaintiff must plead with particularity 'the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy,'" and rejecting "[b]ald speculation" or a "conclusionary statement" as insufficient) (quoting *Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 78 (D.D.C.1992)).[3]

Mr. Gognat did not allege, much less establish, that either Mr. Smith or the nonresident defendants performed substantial acts in Colorado in furtherance of the alleged conspiracy. Thus, he failed to allege facts sufficient to establish personal jurisdiction over the nonresidents under a theory of conspiracy jurisdiction. *See Jungquist*, 115 F.3d at 1031; *First Horizon Merchant Services, Inc. v. Wellspring Capital Management, LLC*, 166 P.3d 166, 178–79 (Colo.App.2007) (similarly concluding that even if the conspiracy jurisdiction theory is accepted in Colorado, the plaintiff had failed to allege facts supporting jurisdiction under that theory).

### 6. Lack of a Hearing

Mr. Gognat also contends that the district court erred in resolving undisputed issues of fact without conducting a hearing. We disagree.

As noted above, a court has discretion whether to resolve a C.R.C.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction based solely on documentary evidence or after holding a hearing. *Archangel Diamond Corp.*, 123 P.3d at 1192. However, a court must not weigh and resolve disputed facts raised in such a motion unless it conducts an evidentiary hearing. *Id.* at 1191.

We reject Mr. Gognat's argument that the district court resolved disputed facts in favor Ms. Ellsworth and MSD. Rather, Mr. Gognat failed to provide documentary evidence supporting personal jurisdiction over those defendants, and the court correctly so found. As to Mr. Ellsworth, Mr. Gognat established a prima facie case of the court's personal jurisdiction. Therefore, the district court's failure to hold a hearing did not prejudice Mr. Gognat.

### 7. Consent to Jurisdiction

Last, Mr. Gognat argues that the nonresident defendants consented to personal jurisdiction when they filed a motion requesting an award of attorney fees pursuant to section 13–17–201. We conclude otherwise.

"It is [a] fundamental tenet of law that one who enters a general appearance may not later challenge personal jurisdiction." *Brown v. Brown*, 183 Colo. 356, 359, 516 P.2d 1129, 1131 (1973). It does not appear that Colorado appellate courts have addressed the specific issue whether a request for attorney fees pursuant to section 13–17–201 constitutes a general appearance that waives an objection to personal jurisdiction.

The applicable Colorado statute, section 13–17–201, provides that a defendant may be awarded attorney fees "in defending the action." It also expressly applies to any successful motion to dismiss an action sounding in tort under C.R.C.P. 12(b) prior to trial.

---

**3.** There is substantial disagreement among courts in other jurisdictions as to the validity of the conspiracy theory of personal jurisdiction as a general proposition and the requirements for invoking it. *See, e.g., Knaus v. Guidry*, 389 Ill. App.3d 804, 329 Ill.Dec. 446, 906 N.E.2d 644, 657–63 (2009); *Mackey v. Compass Marketing,*

*Inc.*, 391 Md. 117, 892 A.2d 479, 484–85 & n. 3 (2006). In those jurisdictions that accept the theory, however, there appears to be a consensus that the plaintiff must at least demonstrate that the resident of the forum state performed acts in furtherance of the conspiracy within the forum state.

To hold that a party may obtain dismissal based on a lack of personal jurisdiction under C.R.C.P. 12(b)(2), but may not then seek attorney fees under section 13–17–201 without waiving that objection would be inconsistent with the statute.

We therefore conclude that a request for attorney fees under section 13–17–201 as part of a motion to dismiss for lack of jurisdiction does not constitute a general appearance. This conclusion is consistent with the holdings of most courts that have addressed this question. *See, e.g., Heineken v. Heineken*, 683 So.2d 194, 198 (Fla.Dist.Ct.App.1996) (request for attorney fees incurred by former husband in asserting defense of lack of personal jurisdiction was not a request for "affirmative relief" and therefore did not constitute a waiver of personal jurisdiction); *Grange Ins. Ass'n v. State*, 110 Wash.2d 752, 757 P.2d 933, 940–41 (1988) (request for attorney fees in a motion to dismiss for lack of jurisdiction was not a request for affirmative relief because the motion for attorney fees was dependent on the plaintiff's claim); *Meyer v. Hatto*, 198 P.3d 552, 557 (Wyo.2008) (motion for attorney fees made by an out-of-state party is not an affirmative action that creates personal jurisdiction); *but see In re Marriage of Adler*, 271 Ill.App.3d 469, 208 Ill.Dec. 31, 648 N.E.2d 953, 956 (1995) (by moving for disbursement of escrow funds and attorney fees and costs before any determination of their motion challenging personal jurisdiction, parties requested affirmative relief and generally appeared in the action); *Johnson v. Johnson*, 233 Kan. 198, 662 P.2d 1178, 1182 (1983) (personal jurisdiction established when party filed attorney fees motion after objecting to the court's jurisdiction).

The nonresident defendants did not seek affirmative relief; they only defended against Mr. Gognat's claims. Therefore, the nonresident defendants did not make a general appearance when they requested an award of attorney fees, and did not thereby waive their defense of lack of personal jurisdiction.

In *Associate Discount Corp. v. Haviland*, 218 So.2d 59 (La.Ct.App.1969), on which Mr. Gognat relies, the court held that a nonresident garnishee had subjected himself to the jurisdiction of the Louisiana court by requesting attorney fees. In so holding, however, the court applied a provision in the Louisiana Code of Civil Procedure which provided that a party makes a general appearance which subjects it to the jurisdiction of the court, and impliedly waives all objections thereto, when, either personally or through counsel, it seeks relief other than certain enumerated types. *Id.* at 61. A request for attorney fees was not among those enumerated types. Thus, the statute at issue in that case was materially different from section 13–17–201.

## C. Attorney Fees

Mr. Gognat contends that because the district court erred in granting the motion to dismiss, the award of attorney fees and costs should also be vacated. We agree as to Mr. Ellsworth. Because we have concluded, however, that the district court did not err in granting the motion to dismiss as to Ms. Ellsworth and MSD, an award of attorney fees to those defendants was mandatory. *Kreft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo.App.2007); *Wark v. Bd. of County Comm'rs*, 47 P.3d 711, 717 (Colo.App.2002). But in light of our disposition as to Mr. Ellsworth, we must vacate the award of attorney fees as to all the nonresident defendants and remand the case to the district court for a redetermination of Ms. Ellsworth's and MSD's reasonable attorney fees incurred in the district court proceedings.

■■■ A party who successfully defends a dismissal under C.R.C.P. 12(b) is also entitled to recover reasonable attorney fees incurred on appeal. *Wilson v. Meyer*, 126 P.3d 276, 284 (Colo.App.2005); *Wark*, 47 P.3d at 717. Ms. Ellsworth and MSD are entitled to such fees. Therefore, we also remand this case to the district court to determine the amount of reasonable attorney fees incurred by Ms. Ellsworth and MSD in this appeal.

## III. Conclusion

Though we have concluded that the district court erroneously dismissed Mr. Gognat's claims against Mr. Ellsworth based on a lack of personal jurisdiction, we also conclude that Mr. Ellsworth is nonetheless entitled to sum-

mary judgment based on the statute of limitations. *See Ridgeview Classical Schools v. Poudre School Dist. R–1,* 214 P.3d 476, 481 (Colo.App.2008) (ordering entry of judgment for appellant on remand where entitlement to judgment was clear on the record) (citing *City of Leadville v. Bishop,* 14 Colo.App. 517, 526, 61 P. 58, 61 (1900)).

Therefore, the judgment is affirmed. The order awarding attorney fees is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge RUSSEL and Judge CONNELLY concur.