2014 COA 86

**John GIDUCK; Shari Nicoletti; and Archangel Group Ltd., a Colorado corporation, Plaintiffs-Appellants,**

v.

**Joe NIBLETT; Mitchell Isaac Lake; Jay Harrison; Philip D. Martin; Tracy-Paul Warrington; Patrick McAleer; and Karl Monger, Defendants-Appellees.**

Court of Appeals No. 13CA0775

Colorado Court of Appeals,
Div. IV.

Announced July 3, 2014

Certiorari Dismissed August 28, 2015

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S. 2012.

858

Foster Graham Milstein & Calisher, LLP, Lawrence G. Katz, Chip G. Schoneberger, Denver, Colorado, for Plaintiffs-Appellants.

Welborn Sullivan Meck & Tooley, P.C., William R. Rapson, Denver, Colorado for Defendants-Appellees Joe Niblett, Philip D. Martin, and Tracy-Paul Warrington.

Hayes, Phillips, Hoffman & Carberry, P.C., Herbert C. Phillips, Fairplay, Colorado, for Defendants-Appellees Mitchell Isaac Lake, Jay Harrison, and Patrick McAleer.

Hall & Evans, L.L.C., Andrew D. Ringel, Conor P. Boyle, Denver, Colorado, for Defendant-Appellee Karl Monger

Opinion by JUDGE GRAHAM

¶ 1 In this defamation case, plaintiffs, John Giduck, his wife Shari Nicoletti, and Archangel Group, Ltd., appeal the district court's judgment in favor of defendants, Joe Niblett, Mitchell Isaac Lake, Jay Harrison, Philip D. Martin, Tracy–Paul Warrington, Patrick McAleer, and Karl Monger.[1]

¶ 2 We conclude the district court lacked personal jurisdiction over Niblett, Lake, Harrison, Warrington, McAleer, and Monger (the foreign defendants). We further conclude that plaintiffs failed to state a claim against Martin. We therefore affirm.

I. Background

¶ 3 Giduck and Nicoletti are Colorado residents. Giduck has written at least three books and given lectures on terrorism and anti-terrorism. He claims to have Ph.D. and Juris Doctor degrees. He also claims to have extensive martial arts experience and to have trained with Russian Airborne and Special Forces units. Giduck also claims to have been hired by several state and federal agencies to provide analysis, consulting, and training. Archangel Group, Ltd., is a business through which Giduck, at all times pertinent, conducted or attempted to conduct, his business.

¶ 4 Plaintiffs sued defendants for defamation (libel per se and libel er quod), trespass, assault, invasion of privacy, intentional interference with contract, tortious interference with prospective business advantage, extreme and outrageous conduct, civil conspiracy, aiding and abetting tortious conduct, preliminary and permanent injunction, and violation of the Colorado Organized Crime Control Act, based upon various Internet postings by defendants on the website socnet.com and other websites. According to the complaint, "[d]efendants waged a public campaign of defamation all over" the Internet in order to discredit Giduck based upon defendants' opinion that Giduck exaggerated, or falsely represented, his expertise in the field of terrorism and counterterrorism.

¶ 5 In their original complaint, plaintiffs did not identify which defendants made the alleged defamatory statements. Defendants filed a motion for a more definite statement under C.R.C.P. 12(e), and the district court granted the motion, ruling:

The complaint names some 20 defendants that allegedly acted in conspiracy to post false and defamatory statements about the plaintiffs on an internet website. The complaint details numerous posts, which disparage the plaintiffs in varying degrees. The complaint does not identify which defendant posted any of the specific defamatory statements but simply alleges that the defendants were acting in concert and conspired to defame the plaintiffs. Basically, the defendants' motion is requesting a more definite statement as [to] which individual defendant posted which specific defamatory comment and approximately when it occurred.

The [c]ourt finds and concludes that [p]laintiffs' complaint lacks sufficient definiteness and particularity to enable the defendants to respond to and defend against each alleged wrong-doing.

---

1. In the district court, plaintiffs sued forty-six additional defendants: socnet.com, Michael Kirk, Jerrod Barentine, Edward D. Clark, Barry Salant, Sean Allen Whittentin, Matthew Longbottom, Laura Stanford, DF Behr, Jason Ole, Patrick Sloan, Daniel Hammond, Joshua Garmon, Richard Aaron Montcalm, Jim Hanson, and John Does 1 through 30. Apparently only the seven named defendants-appellees were served with a summons and complaint in the district court.

¶ 6 Plaintiffs then filed an amended complaint listing approximately 174 statements made by specific defendants that were allegedly defamatory. Plaintiffs incorporated the amended claims by reference into their claims for trespass, assault, invasion of privacy, intentional interference with contract, tortious interference with prospective business advantage, extreme and outrageous conduct, civil conspiracy, aiding and abetting tortious conduct, preliminary and permanent injunction, and violation of the Colorado Organized Crime Control Act (claims three through twelve), all of which generally alleged that unspecified "defendants" had committed the tortious conduct.

¶ 7 Defendants filed separate but substantially similar motions to dismiss. Particularly, Monger filed a motion to dismiss under C.R.C.P. 12(b)(2) and 12(b)(5), arguing in part that plaintiffs failed to establish personal jurisdiction over him, and, thus, dismissal of the complaint was appropriate. The remaining defendants joined in Monger's motion to dismiss. Niblett, Warrington, and Martin filed a joint C.R.C.P. 12(b)(5) motion to dismiss, arguing that plaintiffs' complaint failed to state a claim because the alleged defamatory statements were either not defamatory as a matter of law or opinions protected by the Free Speech Clause of the First Amendment to the United States Constitution.[2] Lake, Harrison, and McAleer also filed a joint C.R.C.P. 12(b)(5) motion to dismiss on grounds that their statements were constitutionally protected. Defendants also renewed their motion for a more definite statement under C.R.C.P. 12(e) based on plaintiffs' failure to identify specific defendants in claims three through twelve.

¶ 8 The district court granted the motions to dismiss. The court granted Monger's motion to dismiss "[p]ursuant to C.R.C.P. 12(b)(2) and C.R.C.P. 12(b)(5)" without findings of fact or conclusions of law. The court granted Lake, Harrison, and McAleer's joint motion, concluding that each alleged defamatory statement was protected opinion. The court also granted Niblett, Warrington, and

Martin's motion to dismiss for the same reason. As to Lake, Harrison, McAleer, Niblett, Warrington, and Martin, the court concluded:

> The statements attributed to these [d]efendants regarding Giduck were blunt, uncomplimentary, and probably "rhetorical hyperbole." But they were also privileged statements of opinion protected by the First Amendment as applied in a litany of [United States] Supreme Court and Colorado appellate cases. The application of those cases is a question of law that must be addressed by this [c]ourt before the case goes any further. Dismissal of the defamation claims in the Amended Complaint is required for failure to state a claim upon which relief can be granted.

The court further concluded that:

> The [c]ourt's [o]rder of August 15, 2012 directs the [p]laintiffs to file an amended complaint of "sufficient definiteness and particularity to enable the defendants to respond and defend against each alleged wrongdoing." As to the third through twelfth claims for relief the [p]laintiffs have ignored this direction. Instead they have simply repeated verbatim the allegations from the [o]riginal [c]omplaint with no attempt whatsoever to tie the alleged wrongdoing to any particular defendant. There is absolutely no allegation in any of these nine claims for relief that these [d]efendants did anything wrong, did anything injurious to [p]laintiffs, or, for that matter, that these [d]efendants did anything at all.
>
> The failure to allege any wrongdoing by these specific [d]efendants in any of these nine claims requires that they be dismissed for failure to state a claim.

¶ 9 On appeal, plaintiffs make three arguments. First, the district court erred in concluding the defendants' statements were constitutionally privileged. Second, the court erred in dismissing claims three through twelve as a sanction for improperly amending their complaint. Third, the court erred in

---

2. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

granting Monger's motion to dismiss for lack of personal jurisdiction. Because personal jurisdiction over a defendant is required before a court may enter enforceable orders, and because all of the defendants other than Martin assert that they were not subject to the *in personam* jurisdiction of the Colorado district court, we address the issue of personal jurisdiction first. *See Currier v. Sutherland*, 218 P.3d 709, 714 (Colo.2009) (personal jurisdiction involves the court's authority over a particular individual); *Rombough v. Mitchell*, 140 P.3d 202, 204 (Colo.App.2006) ("Personal jurisdiction is the court's power to subject a particular defendant to the decisions of the court."); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) ("Personal jurisdiction ... is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication." (internal quotation marks and alterations omitted)); *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (" 'On every writ of error or appeal, the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.' " (quoting *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 453, 20 S.Ct. 690, 44 L.Ed. 842 (1900))).

## II. Personal Jurisdiction

¶ 10 Plaintiffs contend the district court erred in granting Monger's motion to dismiss for failure to establish personal jurisdiction.[3] We conclude that plaintiffs failed to establish the district court's personal jurisdiction over the foreign defendants and therefore the district court's dismissal of the complaint against these defendants was proper.

### A. Standard of Review

¶ 11 Whether a court has personal jurisdiction over a party is a question of law that we review de novo. *Union Pac. R.R. v. Equitas Ltd.*, 987 P.2d 954, 957 (Colo.App. 1999). We also review de novo a trial court's ruling on a motion to dismiss. *First Horizon*

*Merch. Servs., Inc. v. Wellspring Capital Mgmt., LLC*, 166 P.3d 166, 172 (Colo.App. 2007).

¶ 12 A trial court may decide a motion to dismiss under C.R.C.P. 12(b)(2) solely on documentary evidence, including allegations in the complaint, which must be taken as true unless contradicted by other evidence, affidavits, or other written submissions from the parties. *Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 65–66 (Colo.2007); *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo.2005).

¶ 13 When a trial court decides the motion on documentary evidence alone, the plaintiff need only make a prima facie showing of personal jurisdiction by raising a reasonable inference that the court has jurisdiction over the defendant. Conflicts in the evidence must be resolved in favor of the plaintiff. *Goettman*, 176 P.3d at 66; *Archangel*, 123 P.3d at 1193.

### B. Requirements of the Long–Arm Statute

¶ 14 Before a nonresident defendant may be subjected to a Colorado court's jurisdiction, the plaintiff must comply with the requirements of Colorado's long-arm statute, section 13–1–124, C.R.S.2013, and constitutional due process. *Archangel*, 123 P.3d at 1193–94; *see Gognat v. Ellsworth*, 224 P.3d 1039, 1052–53 (Colo.App.2009), *aff'd*, 259 P.3d 497 (Colo.2011). Colorado's long-arm statute confers the maximum jurisdiction permitted by the Due Process Clauses of the United States and Colorado Constitutions; therefore, if a plaintiff satisfies the constitutional requirements, Colorado's long-arm requirements are also satisfied. *Archangel*, 123 P.3d at 1193–94.

¶ 15 To meet the requirements of due process, a defendant must have "certain minimum contacts with the forum state so that he may foresee being answerable in court there." *Id.* at 1194; *see Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ("[D]ue process requires only that in order to subject a defendant to a

---

**3.** Other than defendant Martin, there is no allegation that any other defendant had direct contacts with Colorado or had ever entered the state.

judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice' ") (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

¶ 16 The quantity and nature of these contacts depend on whether the plaintiff alleges general or specific jurisdiction. *Goettman*, 176 P.3d at 67. A court has general jurisdiction if the defendant conducted continuous and systematic activities that are of a general business nature in the forum state. *Id.* A court has specific jurisdiction if the "injuries triggering litigation arise out of and are related to activities that are significant and purposefully directed by the defendant at residents of the forum." *Archangel*, 123 P.3d at 1194 (internal quotation marks omitted). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. ——, 134 S.Ct. 1115, 1121, 188 L.Ed.2d 12 (2014).

> First, the relationship must arise out of contacts that the "defendant *himself*" creates with the forum State. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties. *See World–Wide Volkswagen Corp. [v. Woodson*, 444 U.S. 286, 291–92, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ].... Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be "decisive in determining whether the defendant's due process rights are violated." [*Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980) ].
>
> Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *See, e.g., International Shoe*, [326 U.S.] at 319, 66 S.Ct. 154 (Due process "does not contemplate that a state may make binding

judgment *in personam* against an individual ... with which the state has no contacts, ties, or relations"); *Hanson [v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) ] ("However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him").

*Id.* at 1122. Thus, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* at 1125. "[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123.

¶ 17 "Personal jurisdiction, however, may be waived if the defendant participates in litigation of the merits, even though the defendant raises the defense in the answer." *Archangel Diamond Corp. v. Arkhangelskgeoldobycha*, 94 P.3d 1208, 1216 (Colo.App. 2004), *overruled on other grounds by Archangel*, 123 P.3d 1187; *see T.L. Smith Co. v. Dist. Court*, 163 Colo. 444, 450, 431 P.2d 454, 457 (1967) (the defendant waived its objection to personal jurisdiction by filing a permissive counterclaim seeking damages against the plaintiff); *Harman v. Stillwell*, 944 P.2d 665, 668 (Colo.App.1997) (by filing claims in the litigation that were not required to be filed, and that did not arise from the transactions on which the court based its initial assertion of jurisdiction, the nonresident defendants subjected themselves to the jurisdiction of the court for all purposes).

¶ 18 Plaintiffs did not allege that any of the foreign defendants conducted continuous and systematic activities of a general business nature in Colorado, so we address only the issue of specific jurisdiction over those defendants. We review the documentary evidence de novo to determine whether specific jurisdiction was present. *See Found. for Knowledge in Dev. v. Interactive Design Consultants, LLC*, 234 P.3d 673, 678 (Colo. 2010) (reviewing only allegation that specific jurisdiction had been established); *see also Adams Reload Co. v. Int'l Profit Assocs., Inc.*, 143 P.3d 1056, 1060 (Colo.App.2005)

(limiting appellate review to only those arguments presented to or ruled on by the trial court).

## C. Specific Jurisdiction

¶ 19 In properly viewing the focus of the minimum contacts analysis on the fact that it is the defendants, not plaintiffs or third parties, who must create contacts with the forum state, we turn to the jurisdictional allegations presented by plaintiffs.

¶ 20 Plaintiffs' amended complaint contains the following jurisdictional allegations, which we accept as true for the purpose of C.R. C.P. 12(b)(2) motion:

- Giduck and Nicoletti are "Colorado resident[s]."
- Archangel "is a Colorado corporation with its principal place of business in Bailey, [Colorado]."
- "Joe Niblett is a resident of Florida...."
- "Mitchell Isaac Lake is a resident of Connecticut...."
- "Jay Harrison is a resident of Florida...."
- "Tracy–Paul Warrington is a resident of Texas...."
- "Patrick A McAleer is a resident of New York...."
- "Karl Monger is a resident of Kansas...."
- "The Defendants all committed torts against Plaintiffs here in Colorado, and the harm from those torts was felt here in Colorado by Colorado residents."
- "Many of the defamatory comments were posted on a website called [socnet.com]. The way [socnet] works is that one person posts a statement, and then other [socnet] members are free to comment on the statement and make their own posts."
- "Many of the false and defamatory statements were then published on other websites including: Amazon.com, Facebook, Defense Review, Lawyer Ratingz, Officer.com...."
- "The Defendants all knew that Giduck was a Colorado resident and a member of the Colorado bar."

- "All of the Defendants agreed that they would, and they did, publish false statements about Giduck to harm his reputation as a Colorado attorney."
- "Defendants not only made their statements on [socnet], but they also agreed and worked together to send them to various individuals, customers and potential customers of Giduck's, to Giduck's associates, to a university for which Giduck works, and also made sure that their posts on [socnet] were spread all over the world-wide-web, and not just [socnet].... [D]efendants purposefully disseminated their false and defamatory statements as widely as possible with the intent of destroying Giduck's ability to lecture and teach and to preclude book sales of Giduck's books."

¶ 21 We conclude that plaintiffs have failed to make a prima facie showing of specific personal jurisdiction over the foreign defendants.

¶ 22 First, under *Walden*, plaintiffs' reliance on their own Colorado connections is misguided; the fact that plaintiffs are Colorado residents is only material to determining whether defendants created other contacts with our state. 134 S.Ct. at 1123 ("To be sure, a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Thus, plaintiffs' allegations that "[t]he [d]efendants all committed torts against [p]laintiffs here in Colorado, and the harm from those torts was felt here in Colorado by Colorado residents" is insufficient to establish minimum contacts by defendants. In *Walden*, the Supreme Court held that the defendant's knowledge that the plaintiffs were residents of the forum and would feel harm in the forum was insufficient forum contact for personal jurisdiction. *Id.* at 1124–26. The same is true here. *See, e.g., Rockwood Select Asset Fund XI (6)–1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1180–81, No. 13–4112, 2014 WL 1778048, at *2 (10th Cir. May 6, 2014) (no personal jurisdiction over the defendant be-

cause the plaintiff's "reliance on its own [forum state] connections is misguided" and insufficient for personal jurisdiction). .

¶ 23 Second, plaintiffs did not allege that the statements made by defendants were specifically directed at Colorado. Rather, as plaintiffs alleged, the statements were made on the Internet and distributed "as widely as possible." And plaintiffs' allegation that "[a]ll of the [d]efendants agreed that they would, and they did, publish false statements ... to harm [Giduck's] reputation as a Colorado attorney" is insufficient to establish specific personal jurisdiction because "mere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden*, 134 S.Ct. at 1125.

¶ 24 And while plaintiffs contend that defendants sent their statements to "various individuals, customers and potential customers of Giduck's, to Giduck's associates, [and] to a university for which Giduck works," plaintiffs failed to designate the university or to allege where these individuals, customers, and associates reside. Such bare allegations do not assist plaintiffs in proving personal jurisdiction over the foreign defendants in Colorado. Similarly, plaintiffs' allegations regarding the creation of websites such as "thetruthaboutsocnetlies.com, John Giduck Terror at Belsan blog, Johnny Sells fear, John Giduck Fraud.com, Fake John Giduck Twitter" do not focus on Colorado and do not provide sufficient minimum contacts to subject defendants to personal jurisdiction in Colorado. *Id.* at 1121 ("defendant's suit-related conduct must create a substantial connection with the forum State"); *compare Wagner v. Miskin*, 660 N.W.2d 593, 599 (N.D.2003) (creation of website www. undnews.com subjected the defendant to personal jurisdiction in North Dakota because it was directed at residents of North Dakota and individuals at the University of North Dakota), *with Advanced Tactical Ordinance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 803 (7th Cir.2014) (no personal jurisdiction because "the operation of an in-

teractive website does not show that the defendant has formed a contact with the forum state" and "[t]he connection between the place where an email is opened and a lawsuit is entirely fortuitous"); *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir.2002) (holding Texas plaintiff could not establish personal jurisdiction over nonresident defendants who posted an article about the plaintiff on the Internet because the article did not refer to Texas and was not specifically directed at Texas readers); Telemedicine Solutions LLC v. WoundRight Techs., LLC, 27 F. Supp. 2d 883, 899–900, No. 13 CV 3431, 2014 WL 1020936, at *11 (N.D.Ill. Mar. 14, 2014) (court lacked personal jurisdiction over a defendant who posted allegedly defamatory statements in a Google ad and used an allegedly infringing trademark because "[n]one of Defendant's alleged contacts—its website, Facebook page, Twitter feed, and conference-based marketing efforts—was targeted or aimed at Illinois, or prompted any more than happenstance interactions with Illinois residents or businesses"); *High Tech Pet Prods., Inc. v. Shenzhen Jianfeng Elec. Pet Prod. Co., Ltd.*, No. 1:13–CV–00242, 2014 WL 897002, at *7 (E.D.Cal. Mar. 6, 2014) ("While the presence and use of an interactive website can alone establish minimum contacts, Plaintiff has not provided any evidence that Defendants' online presence was substantially directed towards California."); and *English Sports Betting v. Tostigan*, No. Civ. A. 01–2202, 2002 WL 461592, at *3 (E.D.Pa. Mar. 15, 2002) (alleged defamatory statements posted on the Internet did not subject the defendant to personal jurisdiction in the forum because the "articles were targeted at the international off-shore gambling community," not the residents of the forum state); *but see Edozien v. XS Micro, LLC*, No. MICV201305066F, 2014 WL 1260516, at *2 (Mass.Super.Ct. Mar. 14, 2014) (not reported in N.E.3d) ("[P]osting defamatory content on the internet, which specifically names a Massachusetts resident and his company, satisfies the minimum contacts analysis for the proper exercise of personal jurisdiction.").

¶ 25 Plaintiffs also contend that because defendants conspired together to injure plaintiffs in Colorado, personal jurisdiction

over the foreign defendants is proper. Assuming without deciding that a civil conspiracy could potentially establish personal jurisdiction in Colorado, *see Gognat,* 224 P.3d at 1053–54 (declining to adopt a conspiracy jurisdiction theory in Colorado but addressing without deciding its application to the case), we conclude plaintiffs failed to allege acts by a Colorado resident co-conspirator taken in Colorado in furtherance of the conspiracy.[4] Thus, while plaintiffs allege that their claim for civil conspiracy subjects the foreign defendants to personal jurisdiction, " '[i]n order for personal jurisdiction based on a conspiracy theory to exist, the plaintiff must offer more than 'bare allegations' that a conspiracy existed, and must allege facts that would support a prima facie showing of a conspiracy.' " *Shrader v. Biddinger,* 633 F.3d 1235, 1242 (10th Cir.2011) (quoting *Melea, Ltd. v. Jawer SA,* 511 F.3d 1060, 1069 (10th Cir. 2007)). Plaintiffs have failed to do so.

¶ 26 Accordingly, plaintiffs, who must establish a prima facie showing here, have not alleged facts showing any contacts that the foreign defendants *themselves* created with Colorado, *Walden,* 571 U.S. at ——, 134 S.Ct. at 1122 (the relationship between the defendant and the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum" (quoting *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174)), and have failed to establish personal jurisdiction over the foreign defendants. Thus, we affirm the district court's decision to dismiss the foreign defendants pursuant to C.R.C.P. 12(b)(2).[5]

### D. Potential Waiver of Personal Jurisdiction

¶ 27 In supplemental argument, plaintiffs maintain that Lake, Harrison, and McAleer (the counterclaim defendants) waived their personal jurisdiction challenge by filing permissive counterclaims. Generally, the active defense of a case will subject a defendant to the personal jurisdiction of the court where that defense is maintained. *See T.L. Smith Co.,* 163 Colo. at 450, 431 P.2d at 457; *see also Cont'l Bank, N.A. v. Meyer,* 10 F.3d 1293, 1297 (7th Cir.1993) (personal jurisdiction defense waived where, for two-and-a-half years, the defendants participated in lengthy discovery, filed various motions, and opposed a number of motions, without actively contesting personal jurisdiction); *Yeldell v. Tutt,* 913 F.2d 533, 539 (8th Cir.1990) (personal jurisdiction objection waived where the defendant participated in discovery, filed motions, participated in five-day trial, and filed post-trial motions, all before seeking ruling on personal jurisdiction defense). Thus, a defendant may not actively participate in the litigation and then later decide to raise a personal jurisdiction defense. *See Hunger U.S. Special Hydraulics Cylinders Corp. v. Hardie–Tynes Mfg. Co.,* 203 F.3d 835, 2000 WL 147392, *3 (10th Cir.2000) (unpublished table decision) ("After its lengthy participation in this litigation ... [defendant] may not pull its personal jurisdiction defense out of the hat like a rabbit." (internal quotation marks omitted)).

¶ 28 The counterclaim defendants (1) moved to dismiss the original complaint for lack of personal jurisdiction before they filed an answer; (2) affirmatively pleaded lack of personal jurisdiction in answer to the amended complaint; and (3) joined in Monger's renewed motion to dismiss the amended complaint for lack of personal jurisdiction. The record does not reflect that the counterclaim defendants actively participated in the litigation before asserting their jurisdictional defense. That the counterclaim defendants contemporaneously asserted counterclaims in the same document in which they again raised an affirmative defense of lack of personal jurisdiction is insufficient to constitute waiver of the defense. *See* C.R.C.P. 12(b) ("No defense or objection is waived by being

---

4. Plaintiffs do allege that Martin is a Colorado resident. However, plaintiffs do not allege that Martin took any act within Colorado to further the conspiracy. Accordingly, plaintiffs' complaint does not state a basis for personal jurisdiction based upon civil conspiracy. *Gognat v. Ellsworth,* 224 P.3d 1039, 1053–54 (Colo.App.2009), *aff'd,* 259 P.3d 497 (Colo.2011).

5. The district court's order of dismissal is couched in terms of a dismissal of Niblett, Lake, Harrison, Warrington, and McAleer under C.R.C.P. 12(b)(5); however, we may affirm on other grounds. *See Blood v. Qwest Servs. Corp.,* 224 P.3d 301, 329 (Colo.App.2009) (court of appeals may affirm "on any ground supported by the record").

joined with one or more other defenses or objections in a responsive pleading."); *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1330 (9th Cir.1984) (concluding that the filing of counterclaims does not constitute a waiver of a personal jurisdiction defense asserted in the same pleading). Thus, the counterclaim defendants asserted their personal jurisdiction defense in a timely and appropriate fashion, and their actions sufficiently preserved the argument that the court lacked personal jurisdiction over them.

¶ 29 *T.L. Smith* is not to the contrary. There, the defendant moved to quash service of process for lack of personal jurisdiction. 163 Colo. at 447, 431 P.2d at 456. After the court denied the motion, the defendant answered the complaint. *Id.* But the defendant also expanded the litigation and "filed two more pleadings," including a crossclaim and a permissive counterclaim. *Id.* In reply to the defendant's counterclaim, the plaintiff asserted four additional claims against the defendant. *Id.* The defendant then argued that while the court had jurisdiction over its counterclaim, the court did not have personal jurisdiction over the four additional claims asserted in direct response to its counterclaim. *Id.* On these facts, our supreme court concluded that, by filing a permissive counterclaim and a crossclaim, the defendant "sought affirmative relief from the court" to a degree that it vested the court with personal jurisdiction over all the related claims. *Id.* at 449–50, 431 P.2d at 457.

¶ 30 Unlike the counterclaim defendants here, the defendant in *T.L. Smith* filed additional pleadings after it answered the complaint. In doing so, it actively expanded the scope of the litigation. And neither the counterclaim nor the crossclaim in *T.L. Smith* raised any jurisdictional objections. Indeed, there is no indication that the *T.L. Smith* defendant made any attempt to preserve its personal jurisdiction defense after it lost its motion to quash. In fact, the defendant did not raise personal jurisdiction again until it attempted to use the jurisdictional defense as a shield against the additional claims filed as a result of its own counterclaim. Thus, unlike the counterclaim defendants, the defendant in *T.L. Smith* waived any jurisdictional objection by its apparent lack of preservation of any jurisdictional defense as well as its active expansion of the litigation.

¶ 31 One other significant factor distinguishes this action from *T. L. Smith*. Unlike the permissive counterclaim filed in *T.L. Smith*, here the counterclaim defendants' counterclaims for abuse of process and outrageous conduct arise out of and relate to the action filed by plaintiffs. *See Allen v. Martin*, 203 P.3d 546, 555 (Colo.App.2008) (defining compulsory counterclaim); *see also* C.R.C.P. 13(a). Thus, the outrageous conduct and abuse of process counterclaims are compulsory—not permissive. *See Wood v. Jensen*, 41 Colo.App. 301, 303, 585 P.2d 309, 310 (1978) (outrageous conduct claim in connection with previous lawsuit was a compulsory counterclaim in the prior suit and, as such, could not be asserted in a subsequent proceeding); *see also Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1252 (9th Cir.1987) (concluding that an abuse of process claim is a compulsory counterclaim in the very action which allegedly is abusive); *cf. Hewitt v. Rice*, 154 P.3d 408, 414 (Colo. 2007) (retaining the distinction between abuse of process and malicious prosecution, and stating that an abuse of process claim "serves an important role [of] further[ing] the policy of minimizing all unjustifiable litigation" (internal quotation marks omitted)).

¶ 32 Nothing in *T.L. Smith* suggests that the act of filing a compulsory counterclaim is, by itself, sufficient to waive a personal jurisdiction defense. 163 Colo. at 450, 431 P.2d at 457. And courts generally conclude that it is not. *See, e.g., Matter of Arbitration between InterCarbon Bermuda, Ltd. & Caltex Trading & Transp. Corp.*, 146 F.R.D. 64, 70 (S.D.N.Y.1993) (collecting cases and concluding that "[t]he least common denominator" among them "is that a compulsory counterclaim should not waive a jurisdictional defense"); *Arch Aluminum & Glass Co., Inc. v. Haney*, 964 So.2d 228, 235 (Fla. Dist.Ct.App.2007); *see also Harman*, 944 P.2d at 668–69 (the defendant did not waive personal jurisdiction defense when he filed a claim "required by Colorado law" in a separate proceeding; distinguishing *T.L. Smith* ). Given that a defendant must assert a compul-

sory counterclaim or risk forfeiting it, *Grynberg v. Phillips,* 148 P.3d 446, 448 (Colo.App. 2006), we conclude that the assertion of a compulsory counterclaim alone is insufficient to waive a personal jurisdiction defense.

## III.  Defamation

¶ 33 Plaintiffs next contend the district court erred in granting defendants' motions to dismiss based on its conclusion that all the statements made by defendants were protected opinion. We need not address this contention as to the foreign defendants. But insofar as Martin is concerned, we agree with the district court that the alleged defamatory statements are protected opinion.

### A.  Standard of Review

¶ 34 "We review a district court's decision to grant a C.R.C.P. 12(b)(5) motion to dismiss de novo and apply the same standards as the district court." *Fry v. Lee,* 2013 COA 100, ¶ 17, 408 P.3d 843. We accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Id.* "Nonetheless, we are not required to accept as true legal conclusions that are couched as factual allegations." *Id.*

¶ 35 Whether a statement is defamatory is a question of law we review de novo. *NBC Subsidiary (KCNC–TV), Inc. v. Living Will Ctr.,* 879 P.2d 6, 11 (Colo.1994); *Gordon v. Boyles,* 99 P.3d 75, 79 (Colo.App.2004).

¶ 36 "Finally, because the threat of protracted litigation could have a chilling effect on the constitutionally protected right of free speech, prompt resolution of defamation actions, by summary judgment or motion to dismiss, is appropriate." *Fry,* ¶ 24.

### B.  Alleged Defamatory Statements

¶ 37 "Since the latter half of the 16th century, the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 11, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). "[D]efamatory statements are so egregious and intolerable because the statement destroys an individual's reputation: a characteristic which cannot

be bought, and one that, once lost, is extremely difficult to restore." *Keohane v. Stewart,* 882 P.2d 1293, 1298 (Colo.1994). "To be defamatory, the statement need only prejudice the plaintiff in the eyes of a substantial and respectable minority of the community." *Arrington v. Palmer,* 971 P.2d 669, 671 (Colo.App.1998).

¶ 38 In their complaint, plaintiffs allege that Martin made the following two defamatory statements:

1. "Giduck is a 'charlatan.' "

2. "[Giduck] clearly found his 'calling' in Russia, whether that was due to Russian intervention or too many Clancy novels ... I don't know but that seems to be the place and time that he started exaggerating his resume."

¶ 39 We conclude these statements cannot " 'reasonably [be] interpreted as stating actual facts' " about Giduck. *Milkovich,* 497 U.S. at 20, 110 S.Ct. 2695 (quoting *Hustler Magazine, Inc. v. Falwell,* 485 U.S. 46, 50, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988)); *see also Keohane,* 882 P.2d at 1300. Stating that Giduck is a "charlatan" or that he had read "too many Clancy novels" leading to resume exaggeration are clearly Martin's subjective judgments expressed in "imaginative and hyperbolic terms" which neither contain nor imply verifiable fact. Further, the fact that these statements were placed in an online community where anonymous individuals can express highly biased opinions weighs in favor of finding these statements to be opinion. *See Keohane,* 882 P.3d at 1301 (A letter containing statements of verifiable fact was protected opinion in part because it "appear[ed] in the editorial section of the paper, a traditional forum for debate, where intemperate and highly biased opinions are frequently presented and ... often times should not be taken at face value.").

¶ 40 Accordingly, the district court correctly granted Martin's motion to dismiss because the content, tone, and context of his allegedly defamatory statements show that they are not actionable.

## IV. Additional Claims Dismissed by the District Court

¶ 41 Plaintiffs contend the district court · erred in dismissing claims three through twelve as a sanction for failing to comply with the court's order for a more definite statement. We disagree.

¶ 42 The district court dismissed claims three through twelve, ruling as follows:

> The [c]ourt's [o]rder of August 15, 2012 directs the [p]laintiffs to file an amended complaint of "sufficient definiteness· and particularity to enable the defendants to respond and defend against each alleged wrongdoing." As to the third through twelfth claims ·for relief the [p]laintiffs have ignored this direction. Instead they have simply repeated verbatim the allegations from the [o]riginal [c]omplaint with no attempt whatsoever to tie the alleged wrongdoing to any particular defendant. There is absolutely no allegation in any of these nine claims for relief that these [d]efendants did anything wrong, did anything injurious to [p]laintiffs, or, for that matter, that these particular [d]efendants did anything at all.
>
> The failure to allege any wrongdoing by these specific [d]efendants in any of these nine claims requires that they be dismissed for *failure to state a claim.*

(Emphasis added.) The court then specifically granted defendants' Rule 12(b)(5) motion.

¶ 43 Although the district court was not · quite accurate that plaintiffs had not made any amendment to these claims (indeed, they incorporated all prior amended allegations into claims three through twelve), the court was correct in its assessment that there had been nothing added to the amended complaint that tied any particular defendant to any of the nine remaining claims. Consequently, there was no identification of the defendant or defendants who trespassed, assaulted, invaded privacy, interfered with plaintiffs' unspecified contracts, interfered with any unspecified business advantage, engaged in extreme and outrageous conduct, conspired, aided and abetted, should be enjoined from any future conduct, or who acted in violation of the Colorado Organized Crime

Control Act. Based upon the amended complaint's failure to specify which defendant did what, we agree that the nine claims were properly dismissed under· C.R.C.P. 12(b)(5). *Cf. Fry,* ¶¶ 59–62 (dismissal of ancillary claims to defamation action was appropriate because all the ancillary claims were predicated on the alleged defamatory article and "[a]lternative torts cannot be used to evade the constitutional requirements for defamation actions"); *see, e.g., Jackson v. Mix,* 282 Fed.Appx. 361, 362 (6th Cir.2008) (complaint was properly dismissed where "[n]one of the factual allegations contained in [the plaintiff's] complaint ... are linked with any specific defendant"); *Monroe v. Owens,* 38 Fed. Appx. 510, 515, 517 (10th Cir.2002) (district court properly dismissed complaint for failure to state a claim because "[i]t is impossible to tell from the face of the complaint which defendants were accused of which violations" and "[t]he statements in the complaint are not factually sufficient to put particular defendants on notice of what actions resulted in specific constitutional violations"); *Carter v. Champion Int'l,* 911 F.2d 737, 1990 WL 121888, *2 (9th Cir.1990) (unpublished table decision) (complaint failed to state a claim because it "fail[ed] to specifically mention these defendants or allege any wrongful acts on their behalf"); *see also Garrigan v. Bowen,* 243 P.3d 231, 235 (Colo.2010) ("Because the Colorado Rules of Civil Procedure are patterned on the federal rules, we may also look to the federal rules and decisions for guidance.").

¶ 44 The dissent argues that some of these claims should survive but does not address how we can determine from the face of the complaint the identity of the defendants who should be made to answer. Apparently only the seven defendants addressed in this appeal were served with a summons and complaint, yet sixteen other defendants are named in addition to John Does 1 through 30. In their amended complaint, plaintiffs detail with specificity the statements made by each of the seven, but, with the exception of Martin, never assert that any defendant ever entered the State of Colorado. However, plaintiffs' tort claims allege that unidentified defendants entered their property and as-

saulted them, among other tortious acts. We must assume that the defendant socnet.com was not one of those defendants. The remaining served defendants are entitled to know which of them is alleged to have perpetrated these acts. Without such notice, they are left to wonder if, perhaps, the unserved defendants are the tortfeasors. *Compare* C.R.C.P. 8(e)(1) (even if a plaintiff lacks direct knowledge, he may make allegations against a defendant "upon information and belief"), *with* C.R.C.P. 9 (a)(2) (when a party is designated as unknown, the pleader shall allege matters within his knowledge to identify such party and "his connection with the claim"). The purpose of any complaint of course is to "advise defendant of the nature of the relief sought *against him.*" *People ex rel. Bauer v. McCloskey,* 112 Colo. 488, 490, 150 P.2d 861, 862 (1944) (emphasis added). We note that the record does not contain any request by plaintiffs pursuant to C.R.C.P. 56(f), or any other rule of civil procedure, seeking limited discovery to determine the identity of the defendants they alleged committed torts against them. Plaintiffs' bare argument on appeal that the court should have granted them discovery is unsupported by the record. *See Adams Reload Co.,* 143 P.3d at 1060 (arguments not presented to or ruled on by the trial court cannot be raised for the first time on appeal).

¶ 45 In light of the amended complaint's specificity regarding just what each defendant said, it is not too much to expect that it should have identified—even if only upon information and belief—just what each defendant did. Otherwise, defendants are left without notice necessary to mount a defense. *See, e.g., Jackson,* 282 Fed.Appx. at 362; *Monroe,* 38 Fed.Appx. at 515; *Carter,* 911 F.2d at *2.

## V. Attorney Fees and Costs

¶ 46 Because the district court properly dismissed the complaint against all of the defendants pursuant to C.R.C.P. 12(b)(2) or (b)(5), they are entitled to their reasonable attorney fees incurred on appeal. § 13–17–201, C.R.S.2013 ("In all actions brought as a result of ... an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action."); *Kreft v. Adolph Coors Co.,* 170 P.3d 854, 859 (Colo.App.2007) ("A party who successfully defends a dismissal order is entitled to recover reasonable attorney fees incurred on appeal."). Defendants are also awarded their costs. C.A.R. 39(a) ("[I]f a judgment is affirmed, costs shall be taxed against the appellant unless otherwise ordered."). The amount of reasonable attorney fees shall be determined by the district court on remand. *See* C.A.R. 39.5.

## VI. Conclusion

¶ 47 The judgment is affirmed and the matter is remanded for a determination of reasonable attorney fees.

JUDGE DUNN concurs.

JUDGE VOGT * concurs in part and dissents in part.

JUDGE VOGT, concurring in part and dissenting in part:

¶ 48 I agree with the majority that, under *Walden v. Fiore,* 571 U.S. ——, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), the district court could not assert personal jurisdiction over the nonresident defendants based on their defamatory statements. I also agree that the two statements attributed to the Colorado defendant, Martin, were constitutionally protected statements of opinion that could not afford a basis for liability for defamation. Accordingly, I concur in the majority's resolution of the issues addressed in Parts II and III of the opinion. I do not agree that dismissal of all the remaining claims was warranted at this stage in the litigation, and I therefore respectfully dissent from Part IV of the majority opinion.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2013.

## I. Additional Factual Background

¶ 49 In addition to the facts set forth in the majority opinion, the following facts are relevant to the non-defamation-related claims asserted by plaintiffs and dismissed by the trial court.

¶ 50 As set forth above, plaintiffs sued numerous named and unnamed defendants, asserting that the defendants had set out to destroy plaintiff Giduck's business by publishing defamatory statements about him on various websites. They alleged that defendants' campaign had been largely successful, causing plaintiffs Giduck and Archangel to lose nearly $500,000 in annual profits. In addition to detailing the defamatory statements, plaintiffs described other actions engaged in by defendants, including the following: (1) in January 2012, someone—following up on a suggestion made on socnet.com— "went to Giduck's home while he was out of town, slashed his tires and set a mattress next to his house on fire"; (2) defendants threatened to kill Giduck and, to effectuate their threats, "kept Giduck's residence under surveillance, to include [sic] driving up his driveway in a remote wooded area late at night when they have known that he was traveling for work and that his wife and small child were home alone"; (3) defendants also attacked plaintiff Nicoletti (Giduck's wife), physically threatened and intimidated her and her children, "including posting that they would kill her three-year-old son's pony," and caused problems for her at her place of employment by contacting the employer and stating that Nicoletti and her daughter should lose their top secret security clearances; and (4) defendants published photographs of Nicoletti and her children on the Internet and published her home address, all for the purpose of harassing her and increasing the risk to her safety and that of her family.

¶ 51 In addition to their defamation claims, plaintiffs asserted other tort claims based in whole or in part on the actions described above. Claim 3 (trespass) incorporated the previous factual allegations and asserted, in relevant part, that "[d]efendants intentionally entered onto Giduck's and Nicoletti's property, or caused others to intentionally enter onto Giduck's and Nicoletti's property to slash his tires and set a mattress on fire," thereby causing damage to plaintiffs' property. In claim 4 (assault), plaintiffs asserted that defendants intended to, and did, place them in apprehension of harmful physical contact by the actions described above. Claim 8 (extreme and outrageous conduct) cited both the defamatory statements and defendants' other conduct (trespassing, assaulting, and threatening) in support of their allegations that defendants "engaged in the extreme and outrageous conduct with the intent of causing Giduck and Nicoletti severe emotional distress," and that they did cause such distress. Claim 10 alleged that defendants had aided and abetted other defendants in committing the enumerated torts, including trespass and assault. In claim 12 (violation of the Colorado Organized Crime Control Act), plaintiffs again cited both defamatory statements and the other tortious conduct described above in support of their allegations.

¶ 52 As noted in the majority opinion, when defendants moved for a more definite statement under C.R.C.P. 12(e), the trial court granted the motion, observing that "the defendants' motion is requesting a more definite statement as [to] which individual defendant posted which specific defamatory comment and approximately when it occurred," and finding that the "complaint lacks sufficient definiteness and particularity to enable the defendants to respond to and defend against each alleged wrong-doing." Plaintiffs then filed an amended complaint citing some 174 defamatory statements made by specific defendants. Other than incorporating by reference the new factual allegations, plaintiffs did not further supplement the allegations in claims 3 through 12. However, when some defendants sought a more definite statement as to these claims, plaintiffs responded: "[T]o the extent that [p]laintiffs misinterpreted the Court's Order, and it required that all the allegations be amended, and not just the allegations regarding the quoted defamatory statements, [p]laintiffs request another opportunity to amend."

¶ 53 The trial court did not grant them such opportunity. Rather, finding that plain-

tiffs had ignored its original order and still had not alleged wrongdoing by specific defendants in their third through twelfth claims for relief, the trial court dismissed those claims for failure to state a claim.

## II. Analysis

¶ 54 Whether the order dismissing claims three through twelve is interpreted as a C.R. C.P. 12(b)(5) dismissal for failure to state a claim (as the majority and some of the defendants·interpret it) or as a sanction under C.R.C.P. 12(e) (as plaintiffs and defendant Monger interpret it), I do·not agree with the majority that the order of dismissal should be affirmed in its entirety.·

¶ 55 I note at the outset that certain of the claims were properly dismissed, albeit not for the reason cited by the trial court. Claims 5, 6, 7, and 11 sought relief, on other tort theories or in the nature of injunctive relief, based specifically on defendants' defamatory statements. As a division of this court has recognized, when defamation claims are properly dismissed, ancillary claims seeking recovery on other theories based on the same defamatory statements must also be dismissed. *Fry v. Lee*, 2013 COA 100, ¶¶ 60–62, 408 P.3d 843. Further, claim 9 (civil conspiracy) had to be dismissed because there was no allegation that a Colorado resident performed acts in Colorado in furtherance of the conspiracy. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1053–54 (Colo.App.2009). However, claims 3 (trespass) and 4 (assault) did not seek recovery based on defendants' defamatory statements, and claims 8, 10, and 12 were based in part on actions other than defamation. Those claims should not have been dismissed under any theory at this stage in the litigation.

### A. Dismissal pursuant to C.R.C.P. 12(b)(5)

¶ 56 Motions to dismiss under C.R.C.P. 12(b)(5) for failure to state a claim are disfavored in Colorado. *Qwest Corp. v. Colo. Div. of Prop. Taxation*, 2013 CO 39, ¶ 12, 304 P.3d 217. Such motions may be granted only where it appears beyond doubt that a plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Id.* In evaluating the motion, a court must accept as true all averments of material fact and must view the allegations of the complaint in the light most favorable to the plaintiff. *Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 858 (Colo.App. 2007).

¶ 57 Under these standards, plaintiffs' trespass and assault claims, as well as the claims relying in part on the acts constituting trespass and assault, were sufficient to state a claim for relief. Indeed, neither the trial court nor the majority has identified any element of the respective torts that plaintiffs failed to allege, or any lack of specificity (other than identity of the particular tortfeasors) in the underlying factual allegations. Rather, dismissal was ordered by the trial court, and is affirmed by the majority, based simply on the fact that plaintiffs have not identified which specific defendants committed which tortious acts. I do not agree that that lack of identification warranted dismissal in the circumstances presented here.

¶ 58 Plaintiffs state that, in part because of defendants' use of false identifying information on their web postings, they have been unable to· discover the full extent of each defendant's participation in the tortious conduct; thus, because "much of the evidence necessary to prove plaintiffs' claims remains in the exclusive control of others," it is "a factual impossibility for plaintiffs to uncover the full extent of each of the [d]efendants' actions without discovery." In such circumstances, the trial court should have allowed plaintiffs to undertake limited discovery to identify specific tortfeasors, to the extent such information was not known to them, rather than imposing the drastic sanction of dismissal. *See, e.g., Shockley v. Georgetown Valley Water & Sanitation Dist.*, 37 Colo. App. 434, 436, 548 P.2d 928, 929 (1976) (reversing dismissal for failure to state a claim even though complaint did not set forth certain matters, including precise relationships between· the defendants and the individual committing the tortious acts, and observing that a plaintiff need not set forth with particularity underlying acts giving rise to the claim, "especially as to those matters reasonably unknown to him and within the cognizance of the defendants"); *see also Edmond*

v. *City of Colo. Springs*, 226 P.3d 1248, 1254 (Colo.App.2010) (citing cases in which Colorado courts have allowed plaintiffs to name unknown defendants in complaints); *Rauen v. City of Miami*, No. 06–21182–CIV, 2007 WL 686609, at *4 (S.D.Fla. Mar. 2, 2007) (refusing to dismiss based on plaintiffs' inability to identify the specific defendants involved in the alleged deprivation of their rights, and stating: "Accepting Defendants' argument that Plaintiffs have failed to state a claim against any of the Defendants because of Plaintiffs' inability to identify specific officers would require the Court to dismiss Plaintiffs' case in its entirety. Such a result is clearly not in the interests of justice, for it would reward Defendants for their uniform method of dress ... which makes it virtually impossible for an observer to identify the officers or departments behind each face shield"). The *Rauen* court added: "Of course, as discovery progresses, the parties may identify information that would support the dismissal of (or entry of summary judgment on) claims against particular Defendants." *Id.*

¶ 59 *Rauen* is an unpublished decision, as are the federal decisions relied on by the majority. However, I am persuaded that its approach, rather than that taken in the cases cited by the majority, is consistent with Colorado law disfavoring dismissals for failure to state a claim. It also furthers the interests of justice in a case where evidence of which individual committed which act is, at this point, likely to be "reasonably unknown to [plaintiffs] and within the cognizance of ... defendants." *Shockley*, 37 Colo.App. at 436, 548 P.2d at 929. As in *Rauen*, if discovery reveals that a defendant had no involvement in the non-defamation-related activities, dismissal or summary judgment for that defendant would be warranted. Conversely, if nonresident defendants are identified as having been involved in those activities, the court may have personal jurisdiction over them upon a showing that they committed intentional tortious actions expressly aimed at causing a harmful effect in Colorado. *See Classic Auto Sales, Inc. v. Schocket*, 832 P.2d 233, 239 (Colo.1992); *Vogan v. Cnty. of San Diego*, 193 P.3d 336, 340 (Colo.App.2008).

## B. Dismissal as a Sanction under C.R.C.P. 12(e)

¶ 60 Nor can the order of dismissal be upheld as a sanction for plaintiffs' failure to identify the specific individuals responsible for the conduct described above.

¶ 61 C.R.C.P. 12(e) permits a party to request a more definite statement of any matter not averred with sufficient definiteness or particularity. The rule further provides that, if the motion is granted and the order of the court is not obeyed, "the court may strike the pleading to which the motion was directed or make such order as it deems just." While rulings on C.R.C.P. 12(e) motions and responses to them are committed to the discretion of the trial court, that discretion is not absolute. *See Morgan v. Brinkhoff*, 145 Colo. 78, 80, 358 P.2d 43, 44 (1960) (bill of particulars under Rule 12(e) "ordinarily should not be utilized to unduly expand the pleadings where discovery is the proper method for obtaining information falling outside the category of ultimate facts"); *Unigard Ins. Co. v. Mission Ins. Co. Trust*, 12 P.3d 296, 301 (Colo.App.2000) (where response to C.R.C.P. 12(e) motion was untimely, division "[could not] say that the court's decision to strike the fraud counterclaim ... was manifestly arbitrary," but noted that trial court was free to revisit the decision on remand).

¶ 62 Construing the analogous federal rule, federal courts have recognized that " '[w]here a motion for a more definite statement is justified and an effort is made to comply with the order of the court granting it, the insufficiency of the effort does not justify automatic dismissal of the action.... The draconian remedy of dismissal of the action should be invoked only as a last resort....' " *Pardee v. Moses*, 605 F.2d 865, 866 (5th Cir.1979) (quoting *Schaedler v. Reading·Eagle Publ'n, Inc.*, 370 F.2d 795, 798–99 (3d Cir.1967)); *see* 2A James Wm. Moore et al., Moore's Federal Practice § 12.20 at 2417–18 (2d ed.1979).

¶ 63 As set forth above, plaintiffs complied with the trial court's order for a more definite statement by filing a significantly more detailed amended complaint; when defendants subsequently requested further detail,

plaintiffs requested an opportunity to provide such detail if they had misunderstood the scope of the initial order—a not unreasonable request, in my opinion, given the wording of the initial order. In these circumstances, sanctioning plaintiffs by dismissing their entire remaining complaint, rather than allowing plaintiffs to supply the identity of the defendants if it was known to them or engage in discovery to learn that identity if it was not, was an abuse of discretion.

## III. Conclusion

¶ 64 Plaintiffs' amended complaint, whose factual allegations must be accepted as true at this stage in the proceedings, avers that defendants have damaged them by a course of conduct that, in my view, can fairly be characterized as vicious. Under the trial court's orders and the majority's decision affirming those orders, plaintiffs are left with no remedy in Colorado courts for their losses. While I agree that the defamation claims cannot be maintained for the reasons stated by the majority, I would reverse the order dismissing the non-defamation-related claims and allow plaintiffs the opportunity to seek redress on these claims. It follows that I would also revisit the decision to award defendants the full amount of their attorney fees.